# United States Court of Appeals
## For the First Circuit

No. 18-1694

RAFAEL LÓPEZ-SANTOS and ERASMO DOMENA-RÍOS,

Plaintiffs, Appellants,

v.

METROPOLITAN SECURITY SERVICES,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Thompson, Lipez, and Barron,
Circuit Judges.

Judith Berkan, with whom Mary Jo Mendez and Berkan/Mendez were on brief, for appellants.
Luis R. Pérez-Giusti, with whom Liana M. Gutiérrez-Irizarry, Adsuar Muñiz Goyco, and Seda & Pérez-Ochoa, P.S.C., were on brief, for appellee.

July 23, 2020

**LIPEZ**, <u>Circuit Judge</u>.  Appellants Rafael López-Santos ("López") and Erasmo Domena-Ríos ("Domena") served as court security officers for the District of Puerto Rico for thirty-two years.  Their tenures ended in 2015 when appellee Metropolitan Security Services d/b/a Walden Security ("Walden") assumed the federal contract to provide courthouse security services and refused to hire them because they lacked certification from a law enforcement training academy.  After López and Domena brought suit for statutory separation pay pursuant to Puerto Rico Law 80, the district court granted summary judgment for Walden.

On appeal, López and Domena argue that the district court conducted the wrong legal analysis and that Walden should be held liable pursuant to Puerto Rico's common law successor employer doctrine.  We agree that the district court misconstrued López and Domena's theory of liability, leading it to conduct a largely irrelevant analysis of their claims, but we nevertheless affirm.  Although we recognize the unfortunate loss of livelihood experienced by López and Domena, the successor employer doctrine is simply inapplicable to their case, leaving them with no remedy pursuant to Law 80.

**I.**

The following facts are undisputed by the parties.  López and Domena both began work as court security officers ("CSOs") in 1983.  They were among the original thirteen CSOs serving the

- 2 -

District of Puerto Rico and received multiple accolades for their excellent work.

The United States Marshals Service ("USMS") drafts and manages the federal contract governing court security services for the District of Puerto Rico. The USMS awards the contract to private security companies, and those companies in turn hire CSOs to provide the District of Puerto Rico courthouses with armed security guard services. During the thirty-two years that López and Domena worked as CSOs, a number of different private security companies held the USMS contract at various times, and López and Domena worked for all of those companies.

In September 2015, the USMS awarded the contract to Walden, effective December 1, 2015. The contract set forth the minimum qualifications for CSOs employed by the contractor. Specifically, it stated:

> [E]ach individual designated to perform as a CSO [shall] ha[ve] successfully completed or graduated from a certified Federal, state, county, local or military law enforcement training academy or program that provided instruction on the use of police powers in an armed capacity while dealing with the public. The certificate shall be recognized by a Federal, state, county, local or military authority, and provide evidence that an individual is eligible for employment as a law enforcement officer.

The record demonstrates that this same language had appeared in the USMS's contract with Akal Security, Inc. ("Akal"), the

- 3 -

contractor immediately preceding Walden, as well as the contract with MVM Security ("MVM"), the contractor immediately preceding Akal.

In October 2015, Walden convened two meetings for all of the CSOs who were then employed by Akal. During the meetings, Walden provided information about its company policies and benefits and invited all of Akal's CSOs to submit employment applications to Walden. López and Domena attended Walden's meetings and submitted applications. However, neither of them had completed or graduated from a certified law enforcement training academy, as required by the USMS contract with Walden. This fact was reflected in their applications, both of which requested a waiver of the certification requirement.

On November 30, 2015, the Vice President of Walden's Federal Services Division notified López and Domena that they were ineligible for Walden's CSO positions because they failed to satisfy the certificate requirement. They were the only two Akal CSOs not hired by Walden. As of December 1, 2015, they were out of a job.[1]

---

[1] It is not clear why the lack of certification did not become an issue when López and Domena were hired by Akal and MVM, but there is no evidence in the record suggesting that anyone ever questioned the qualifications of López and Domena during the fourteen years that MVM held the USMS contract, and the two to three years that Akal held the contract.

Thereafter, López and Domena, along with other members of the courthouse community, tried to dissuade Walden from enforcing the certification requirement against them. Roberto Santiago, the site supervisor under both Akal and Walden, spoke with Walden representatives about López and Domena's extensive experience and stellar employment records, demonstrating that they had "the sufficient skills and knowledge to be CSOs." Then-Chief Judge Aida M. Delgado-Colón and Judge Carmen Consuelo Cerezo asked the USMS to waive the certificate requirement for López and Domena in light of their long history of impeccable service.[2]

After all of those efforts failed, López and Domena filed the instant lawsuit for statutory separation pay pursuant to Puerto Rico Law 80, invoking the federal district court's diversity jurisdiction. See 28 U.S.C. § 1332(a)(1), (e). In November 2017, the parties filed cross motions for summary judgment, agreeing that the relevant facts were not in dispute. The district court granted Walden's motion, reasoning that Law 80 did not apply to López and Domena's claims. See López-Santos v. Metro. Sec. Servs.,

---

[2] In a letter to Judge Cerezo, the USMS took the position that because López and Domena were employees of Walden and not the USMS, the USMS would not instruct Walden to waive the certificate requirement; rather, Walden would have to affirmatively request that the USMS waive the requirement. At oral argument, counsel for Walden represented that Walden never asked the USMS for a waiver because Walden did not interpret the contract as permitting such a waiver. López and Domena dispute that interpretation of the contract, but the dispute is not material to our analysis.

<u>Inc.</u>, 320 F. Supp. 3d 338, 343-44 (D.P.R. 2018). López and Domena timely appealed.

## II.

### A. Legal Framework

We review a grant of summary judgment de novo, construing the record in the light most favorable to the non-moving party. <u>See</u> <u>Lapointe</u> v. <u>Silko Motor Sales, Inc.</u>, 926 F.3d 52, 54 (1st Cir. 2019). As a federal court sitting in diversity jurisdiction, we must apply state substantive law to assess whether summary judgment is appropriate. <u>See</u> <u>Erie R.R. Co.</u> v. <u>Tompkins</u>, 304 U.S. 64, 78-79 (1938). Accordingly, Puerto Rico law governs the substantive issues in this appeal. <u>See</u> 28 U.S.C. § 1332(e) (treating the Commonwealth of Puerto Rico as a state for purposes of diversity jurisdiction).

Puerto Rico Law 80 imposes a monetary penalty, commonly known as the "mesada," on employers who discharge employees without "just cause." <u>See</u> P.R. Laws Ann. tit. 29, § 185a (2015)[3] ("Every

---

[3] All citations to Law 80 are to the version of the law in effect in 2015 when Walden refused to hire López and Domena. Law 80 was amended in significant ways in 2017, but the amendment does not contain a statement of retroactivity, <u>see</u> P.R. Laws Ann. tit. 29, §§ 185a-185n (added on Jan. 26, 2017, No. 4), nor do the parties suggest that it should be applied retroactively. <u>See</u>, e.g., <u>Hughes Aircraft Co.</u> v. <u>U.S. ex rel. Schumer</u>, 520 U.S. 939, 946 (1997) (applying the "time-honored presumption" against retroactivity where "[n]othing in the [statutory] amendment evidences a clear intent by Congress that it be applied retroactively, and no one suggests otherwise").

- 6 -

employee in commerce, industry, or any other business or workplace . . . in which he/she works for compensation of any kind, contracted without a fixed term, who is discharged from his/her employment without just cause, shall be entitled to receive from his/her employer, in addition to the salary he/she may have earned: [various forms of compensation]."); Otero-Burgos v. Inter Am. Univ., 558 F.3d 1, 7-8 (1st Cir. 2009) (describing the "mesada" and the operation of Law 80). In this manner, Law 80 modifies the concept of "at-will" employment, which traditionally permits employers to dismiss employees who do not have a contract for a fixed term "for any reason or no reason at all." See Otero-Burgos, 558 F.3d at 7 (internal quotation marks omitted).

Because Law 80 provides compensation for "discharge without just cause," a plaintiff invoking Law 80's protection must, as a general rule, demonstrate as a threshold matter that he or she had an employment relationship with the defendant entity and that the defendant entity terminated that relationship through a "discharge." See P.R. Laws Ann. tit. 29, §§ 185a, 185e (emphasis added). However, there are two exceptions to this requirement.

First, pursuant to Article 6 of Law 80, after the sale of a business, "[i]n the event that the new acquirer chooses not to continue with the services of all or any of the employees and hence does not become their employer, the former employer shall be liable for the [mesada]." See id. § 185f. Under those

- 7 -

circumstances, although the seller did not technically "discharge" the employee -- rather, the seller failed to protect the employee in the contract of sale, and the acquirer subsequently declined to hire the individual -- the seller is liable to pay the mesada pursuant to Article 6.  See id.

Under the second exception, known as the "successor employer doctrine" and developed through Puerto Rico common law, the acquirer rather than the seller is liable for the mesada.  See Rodríguez Oquendo v. Petrie Retail Inc. D.I.P., 167 P.R. Dec. 509, __ P.R. Offic. Trans. __ (2006).  Pursuant to this doctrine, if an employer unjustly terminates one of its employees and then transfers the business to a new entity through a sale of assets or a merger, the previously discharged employee may hold the acquirer liable for the mesada, even though it was the predecessor entity that was actually responsible for the unjust discharge.  See id. Thus, the successor employer doctrine permits a plaintiff to seek the mesada from an entity with which the plaintiff never had any employment relationship at all.

B.   The District Court Decision

Both before the district court and on appeal, López and Domena have consistently invoked the successor employer doctrine as their theory of liability.  They concede that they were never "discharged" by Walden, given that Walden never hired them in the first place, and thus Walden cannot be liable under the traditional

Law 80 analysis. They also explicitly disclaim reliance on Article 6 of Law 80, acknowledging that the plain text of Article 6 requires a sale of a business. There was no such sale from Akal to Walden.

Yet the district court limited its analysis to the issues conceded and disclaimed by López and Domena. Specifically, it granted summary judgment to Walden because Walden was never López and Domena's "employer" and thus never discharged them,[4] and because Article 6 of Law 80 does not apply to their case because there was no sale of a business from Akal to Walden. See López-Santos, 320 F. Supp. 3d at 343-44. In doing so, the district court ignored the only theory of liability that López and Domena actually do advance: the successor employer doctrine. This legal error requires us to decide whether to remand for the district court to conduct the proper analysis or to conduct our own legal analysis of the successor employer doctrine's applicability in the first instance, given the principle that we may affirm a grant of summary

_____

[4] López and Domena argue to us that the district court's analysis of whether Walden was ever their "employer" improperly relied on definitions of "employer" and "employee" that were added to Law 80 by the Labor Reform Act in 2017. For the reasons stated in footnote 3, we agree. However, this particular error is immaterial, given the district court's larger error. Put differently, the district court's misplaced reliance on these new statutory definitions only came into play in a portion of the district court's analysis that we find irrelevant.

judgment on any ground supported by the record. See Robinson v. Town of Marshfield, 950 F.3d 21, 24 (1st Cir. 2020).

We elect the latter approach. Because there are no material factual disputes, our analysis is purely legal and requires no further factfinding by the district court. Moreover, the successor employer doctrine is so clearly inapplicable to López and Domena's case that any remand to the district court would be futile, resulting in a waste of the parties' resources.

## C.  Application of Successor Employer Doctrine

López and Domena's theory of liability based on the successor employer doctrine fails for two distinct reasons. First, the successor employer doctrine is applicable only where a plaintiff seeks to hold the successor entity liable for a Law 80 violation by the predecessor entity. See Rodríguez Oquendo, 167 P.R. Dec. 509 (citing Piñeiro v. Int'l Air Serv. of P.R., Inc., 140 P.R. Dec. 343, 40 P.R. Offic. Trans. __ (1996), which held a successor employer liable pursuant to Law 80 for dismissals that took place five months prior to the transfer of the business); see also id. (explaining that the successor employer doctrine allows a plaintiff "to hold an entity liable for the unfair practices committed by another" (quoting L.R.B. v. Club Náutico, 97 P.R. 376, 390 (1969)). But here López and Domena do not take issue with any action by Akal, the prior entity. Rather, they cite Walden's failure to hire them as the triggering event for their

- 10 -

Law 80 claim. Thus, the successor employer doctrine simply does not apply to the situation at bar.

If that were not enough, the successor employer doctrine is also applicable only where "an employer . . . replaces another through a transfer of assets or a corporate merger." Id.; see also id. (holding that the successorship doctrine applies to the transfer of assets in a federal bankruptcy proceeding, even if free of liens). In this case, López and Domena concede that Akal did not sell a business to Walden -- indeed, Akal and Walden had no relationship with one another other than the fact that they happened to win the USMS contract in consecutive terms. For this reason as well, Walden cannot be liable under the successor employer doctrine.

López and Domena's arguments to the contrary are unavailing. First, they invoke the multifactor test used to determine whether the successor business "replaced" the former business, a requirement for the imposition of successor liability under the successor employer doctrine. See id. (holding that the successor business has "replaced" the former business when there is "a substantial similarity . . . 'in the operation and continuity of the identity of the enterprise before and after the change'" (quoting L.R.B. v. Cooperativa Azucarera, 98 P.R. 307, 316 (1970)). The factors examined by Puerto Rico courts include:

> (1) [T]he existence of a substantial continuation in the same business activity; (2) the utilization of the same operating plant; (3) the employment of the same or substantially the same labor force; (4) to maintain the same supervisory personnel; (5) to use the same equipment and machinery and to employ the same methods of production; (6) the production of the same products and the rendering of the same services; (7) continuity of identity; and (8) the operation of the business during the transfer period.

Id. (quoting Cooperativa Azucarera, 98 P.R. at 317-18) (alteration in original). López and Domena argue that because the record indisputably demonstrates that nearly all of these factors are satisfied in their situation, we must hold Walden liable as Akal's "replacement."

We generally agree with López and Domena's characterization of the record, but that does not win the day for them. Specifically, the fact that Walden may have "replaced" Akal within the meaning of this multifactor test does not overcome the threshold limitations of the successor employer doctrine that we have already noted. Rather, those formal limitations prevent us from even applying the multifactor test. To the extent that López and Domena suggest that their case demonstrates the need to revisit those formal limitations, that argument also fails. "A litigant who chooses federal court over state court 'cannot expect this court to . . . blaze new and unprecedented jurisprudential trails' as to state law." Doe v. Trs. of Bos. Coll., 942 F.3d 527, 535

- 12 -

(1st Cir. 2019) (quoting A. Johnson & Co. v. Aetna Cas. & Sur. Co., 933 F.2d 66, 73 n.10 (1st Cir. 1991)) (omission in original). Instead, we "must take state law as [we] find[] it: not as it might conceivably be, some day; nor even as it should be." Kassel v. Gannett Co., 875 F.2d 935, 950 (1st Cir. 1989) (internal quotation marks omitted).

López and Domena also gain no benefit from the former[5] executive order that they invoke. Executive Order 13,495 mandated that new federal contractors offer a right of first refusal to all qualified employees of the previous contractor. See Exec. Order No. 13,495, Nondisplacement of Qualified Workers Under Service Contracts, 74 Fed. Reg. 6103 (Jan. 30, 2009). Although the cited executive order does reflect a federal interest in "a carryover work force," see id., which arguably might be relevant to the question of whether López and Domena's discharge was "without just cause" under Commonwealth law, we never even reach that question given the futility of López and Domena's successor employer theory of liability.

---

[5] Executive Order 13,495 was in effect when Walden assumed the USMS contract in 2015. See Exec. Order No. 13,495, Nondisplacement of Qualified Workers Under Service Contracts, 74 Fed. Reg. 6103 (Jan. 30, 2009) (previously codified at 29 C.F.R. part 9). President Trump rescinded Executive Order 13495 in 2019. See Exec. Order No. 13,897, Improving Federal Contractor Operations by Revoking Executive Order 13495, 84 Fed. Reg. 59,709 (Oct. 31, 2019).

Accordingly, we must _affirm_ the district court's grant of summary judgment.  _So ordered._