# United States Court of Appeals
## For the First Circuit

No. 19-1928

WILLIAM PUIG MARTÍNEZ; MERALYS COLÓN; HERNAN MÉNDEZ NAZARIO;
CONJUGAL PARTNERSHIP MÉNDEZ-COLÓN,

Plaintiffs, Appellants,

v.

NOVO NORDISK INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., Chief U.S. District Judge]

Before

Howard, Chief Judge,
Kayatta, Circuit Judge,
Casper,[*] District Judge.

Mónica Vega Quintana, with whom Mónica Vega Quintana Law
Office, Rubén T. Nigaglioni, and Nigaglioni Law Office, P.S.C.,
were on brief, for appellants.
Melissa C. Rodriguez, with whom William R. Peterson, Mary
Grace Patterson, and Morgan, Lewis & Bockius LLP were on brief,
for appellee.

---

[*] Of the District of Massachusetts, sitting by designation.

March 29, 2021

**KAYATTA**, **Circuit Judge**.    Plaintiffs William Puig Martínez and Hernan Méndez Nazario are former employees of Novo Nordisk Inc.    During a global reorganization, Novo Nordisk terminated plaintiffs from their Puerto Rico-based jobs and did not select them for post-reorganization positions.    Plaintiffs contend that their termination and non-selection violated Puerto Rico's statutes prohibiting age discrimination in employment, Act No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §§ 146–51 ("Law 100"), and penalizing termination without just cause, Act No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29, §§ 185a–185m ("Law 80").    The district court disagreed and granted summary judgment in favor of Novo Nordisk.    For the reasons that follow, we affirm.

## I.

We refer to the undisputed material facts set out in the district court's summary judgment decision.    See Martínez v. Novo Nordisk, 397 F. Supp. 3d 207 (D.P.R. 2019).    Novo Nordisk is a healthcare company specializing in diabetes care that operates in several countries.    Id. at 215.    In April 2007, Novo Nordisk hired Puig and Méndez as salespeople (also called Diabetes Care Specialist IIIs or DCS IIIs) in its Puerto Rico district.    Id.    In September 2016, the Puerto Rico district had a sales staff of fourteen DCS IIIs, including plaintiffs.    Id.

- 3 -

To cut costs, Novo Nordisk undertook a global reorganization that ultimately resulted in the termination of about one thousand employees during the fall of 2016. See id. By the reorganization's end, Novo Nordisk had (1) eliminated the Puerto Rico district and all fourteen of its DCS positions; and (2) created three new DCS positions that would handle all Puerto Rico sales and report to Novo Nordisk's "South Miami Florida district." Id.

On October 3, 2016, Novo Nordisk distributed a list of responses to "Frequently Asked Questions" about the reorganization. See id. The FAQs advised that Novo Nordisk's workforce would shrink by about one thousand employees worldwide and that Novo Nordisk planned "to do notifications by the end of October" to inform employees whether they "ha[d] a job." The FAQs also stated that "[a]ffected employees" could apply for open positions at the company and would "receive a list of available opportunities when notified and instructions on how to apply, if interested."

On October 24, 2016, Novo Nordisk sent letters informing Puig, Méndez, and the other salespeople in the Puerto Rico district that their "department has decided to eliminate [their] position[s] and, therefore, [their] employment will end effective November 18, 2016." Id. at 216. The termination letters stated

- 4 -

that Novo Nordisk would pay severance in accordance with Law 80, if applicable.  Id. at 216.

The letters also noted that "[a]s a result of the consolidations and restructurings that took place, there are open positions throughout the organization," and the letters "strongly encourage[d]" terminated employees, including plaintiffs, "to apply for any open positions for which [they were] qualified" by October 27.  The open positions included the three Puerto Rico-based DCS positions that would report to the "South Miami Florida district."  Id. at 215.  According to Novo Nordisk, successful candidates would have "proven leadership and decision-making abilit[ies]"; "be [] self-starter[s]"; and "be able to evaluate options and make decisions on [their] own with minimal supervision."  Id. (last alteration in original).

Nelson Almérico and John Thrasher conducted the interviews for the post-reorganization DCS positions covering Puerto Rico.  Id.  After interviewing Puig (age fifty-seven) and Méndez (age forty-eight) on November 1 and 2, respectively, the interviewers assigned each one a rating of "Meets Expectations." Id. at 215–16.  Almérico and Thrasher opined that Puig had significant experience but lacked "a high enough level of probing and engaging skills" and did not present "as strong a plan as others."  Id. at 216.  And the interviewers noted that Méndez had "[g]reat collaboration [skills]" and "[a]ppeared coachable," but

that he was "[n]ot a strong closer," and that he was not able to provide examples of how he would adapt to the changing market. Id. at 216 (alterations in original). The three candidates ultimately selected -- Jose Velázquez Faccio (age forty-three), Jose Cruzado (age forty-seven), and Carmen Irizarry (age forty-seven) -- received "Exceeds Expectations" ratings.

On or about November 18, 2016, Novo Nordisk sent letters to plaintiffs confirming their separation from the company. See id. at 216. Each letter enclosed a "Confidential Agreement, Release and Waiver," which, if signed, would entitle plaintiffs to certain enumerated benefits. But the letters pledged that Novo Nordisk would pay plaintiffs "severance in accordance with Law 80" in an amount specified in an attached exhibit regardless of whether they signed the document. Id. True to its word, Novo Nordisk paid $82,137.27 to Puig and $67,845.96 to Méndez. See id. at 217.

Plaintiffs filed this action alleging (i) discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634; (ii) unlawful cancellation of benefits in violation of the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. §§ 1161-1169; (iii) age discrimination in violation of Law 100; (iv) unjust dismissal in violation of Law 80; and (v) a derivative claim by Méndez's spouse, Meralys Colón, under Puerto Rico's general tort statute, Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141. The

district court granted summary judgment in Novo Nordisk's favor on all of plaintiffs' claims.  Plaintiffs appealed.

## II.

We review a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmovants and drawing all reasonable inferences in their favor. Rodríguez-Cardi v. MMM Holdings, Inc., 936 F.3d 40, 46 (1st Cir. 2019).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Plaintiffs do not contend that the district court improperly granted summary judgment on their ADEA and COBRA claims, so we do not review those rulings.  Nor do we have reason to analyze separately Meralys Colón's derivative claim for tort damages because, as plaintiffs acknowledge, it depends entirely on the success of her spouse's claims.  See Ramos-Santiago v. WHM Carib, LLC, 919 F.3d 66, 69 n.2 (1st Cir. 2019).  Rather, plaintiffs train their challenge on the district court's grant of summary judgment in Novo Nordisk's favor on plaintiffs' Puerto Rico law claims under Law 100 and Law 80.  We address each claim in turn.

## A.

Law 100 provides a cause of action for persons who suffer employment discrimination due to their age.  Ramos-Santiago, 919

F.3d at 72. Law 100's protections against age discrimination are "coterminous" with the ADEA's protections, but call for an idiosyncratic burden-shifting scheme to analyze discrimination claims. See Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 18 (1st Cir. 2007). In the district court and on appeal, plaintiffs devote considerable effort to establishing that the burden of proof settled on Novo Nordisk. We sidestep that issue entirely by assuming without deciding that Novo Nordisk bore the burden of proving that plaintiffs' discharge was not the result of age discrimination. The pivotal question then becomes whether the record would preclude any reasonable jury from finding that Novo Nordisk failed to carry this burden by showing that age discrimination was not the reason for plaintiffs' discharge. See Cardona-Jimenez v. Bancomercio de P.R., 174 F.3d 36, 43 (1st Cir. 1999) (requiring judgment in favor of employer who was assumed to bear the burden of proof because no reasonable jury could have found that plaintiff was dismissed on account of age). For the following reasons, we agree with Novo Nordisk that the record is devoid of evidence that would allow a reasonable jury to find in favor of plaintiffs, no matter who bears the burden of proof.

As to Méndez, the discrimination claim defeats itself when stated in concrete terms; i.e., the interviewers selected forty-seven-year-old candidates for two of the three positions

instead of the forty-eight-year-old Méndez because of his age. This is simply not a scenario that invites even speculation of age discrimination. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996) (explaining that an inference of age bias "cannot be drawn from the replacement of one worker with another worker insignificantly younger").

The fifty-seven-year-old Puig, by contrast, can at least say he was significantly older than the chosen candidates. But there is no evidence to support his claim that he was not given a fair shot because of his age.

Puig argues that the interviewers -- Thrasher and Almérico -- displayed age-based animus by saying that the ideal candidate would have "energy," be "dynamic," and possess "stamina." We can certainly imagine a context in which such comments might suggest age-based bias. Here, though, the comments were voiced in the context of discussing three positions that would be responsible for a sales territory previously covered by fourteen people. So it was accurate and relevant to describe the new positions as more demanding. Moreover, the interviewers said nothing to suggest that they thought Puig lacked such attributes. Rather, they cited the relative weakness of his "plan" and his lower "level of probing and engaging skills" compared to other candidates. Martínez, 397 F. Supp. 3d at 216. In a context like this one, jurors could not find age discrimination based on the

challenged remarks.  See Woodward v. Emulex Corp., 714 F.3d 632, 640 (1st Cir. 2013) (applying Massachusetts law and holding that comment regarding need to re-energize sales team did not create triable issue as to age-based animus); Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 54 (1st Cir. 2008) ("It is well-established that 'energy,' as well as similarly defined terms, does not necessarily connote youth or other age-related characteristics.").

Puig next argues that his interview on November 1, 2016, was a pretext for discrimination because the company had already decided whom to hire.  To support this claim, Puig points primarily to an attachment to the letter sent to him on November 18, 2016. It states:

> The attached Exhibit B-1 lists the positions and ages of all active U.S. employees in the decisional unit who on or around October 24, 2016 (i) were selected for termination and are eligible for separation pay and benefits as a result of the decisions made with respect to this decisional unit; (ii) were not selected for termination and are not eligible for separation pay and benefits as a result of the decisions made with respect to this decisional unit; and (iii) who were selected for termination, but were offered and accepted another position with the company.

Puig would have us read the foregoing so that the phrase "who on or around October 24, 2016," carries over to each of the three following numbered clauses, particularly clause (iii), and thus suggests that the new positions were filled "on or around October 24."  But clause (iii), unlike clauses (i) and (ii), has

its own "who," without the date qualifier. So, the language, while certainly ungrammatical, tilts against Puig's proffered reading. Even if we treated the "who" in clause (iii) as surplusage, evidence in the record indicates that "on or around October 24, 2016," would not carry over to every part of clause (iii). Rather, clause (iii) is sensibly read as a past-tense description of the course of events predicted in the FAQs; i.e., on October 24, 2016, employees were notified about whether they "ha[d] a job," affected employees "receive[d] a list of available opportunities when notified," and Novo Nordisk later chose applicants to fill the available positions. Moreover, any arguable ambiguity created by the sentence's awkward syntax is belied by language elsewhere in the attachment that lists employees who "accepted new position[s] in the Company as of November 15, 2016."

Puig also argues that other interviewees made statements indicating that some interviewees knew before the interview process ended whether they would be selected and that plaintiffs "believed" some knew the results before the process ended. But statements by nonparties about what other nonparties said or thought cannot suffice to create a genuine dispute of material fact (at least absent a showing that the statements can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2)). See Soto-Padró v. Pub. Bldgs. Auth., 675 F.3d 1, 7 (1st Cir. 2012) (citing Dávila, 498 F.3d at 17) (noting that

- 11 -

deponent's testimony about comparator employee's statements was inadmissible hearsay); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."). Nor do plaintiffs' own beliefs and impressions suffice. See Pina v. Children's Place, 740 F.3d 785, 796 (1st Cir. 2014) (explaining that a party opposing summary judgment "cannot rely 'merely upon conclusory allegations, improbable inferences, and unsupported speculation'" (quoting Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 855-56 (1st Cir. 2008))).

Finally, Puig criticizes the interviewers' evaluation criteria. In his view, Novo Nordisk did not adequately consider experience, past performance (including sales and disciplinary records), prior training, or advanced degree possession (a preference expressed in the job posting). Puig would have been chosen for the job, he argues, had Novo Nordisk used a better rubric or given more weight to these factors. These complaints amount to little more than second-guessing Novo Nordisk's facially valid evaluation criteria and conclusions, and such arguments do not provide any basis to conclude that age -- not interview performance -- motivated Puig's non-selection. See Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991) ("Courts may not sit as super personnel departments, assessing the merits -- or

even the rationality -- of employers' nondiscriminatory business decisions.").

In sum, we affirm the grant of summary judgment on plaintiffs' Law 100 claims because there is no evidence from which a reasonable jury could reject Novo Nordisk's showing that it did not discriminate against plaintiffs based on their age.[1]

**B.**

We turn next to plaintiffs' Law 80 claims.[2] Law 80 requires an employer who terminates an employee without just cause to pay severance (known as a "mesada") to the dismissed employee. See Otero-Burgos v. Inter Am. Univ., 558 F.3d 1, 7 (1st Cir. 2009). An employer seeking to discharge an employee must comply with certain requirements to avoid this penalty. Law 80 "provides six examples of just cause, including three that relate to company restructuring or downsizing." Carrasquillo-Ortiz v. Am. Airlines, Inc., 812 F.3d 195, 196 (1st Cir. 2016) (citing P.R. Laws Ann. tit. 29, § 185b(d), (e), (f)). An employer citing a restructuring or downsizing reason as just cause "must give preference to those employees with greater seniority over those with less seniority

---

[1] Even if Méndez's Law 100 claim had made it out of the gate, it would fail for the same reasons that Puig's claim fails.

[2] We refer to the version of Law 80 in force prior to its amendment in 2017. See P.R. Laws Ann. tit. 29, §§ 185a-185n (added on Jan. 26, 2017, No. 4); López-Santos v. Metro. Sec. Servs., 967 F.3d 7, 11 n.3 (1st Cir. 2020).

within the same occupational classification." Id. (citing P.R. Laws Ann. tit. 29, § 185c). Subject to exceptions, an employer who "terminates a more senior employee and retains a less senior employee within the same occupational classification . . . must pay the terminated employee a mesada." Id. (citing P.R. Laws Ann. tit. 29, § 185c). So, to terminate an employee without paying a mesada, an employer must comply with section 185b and, if applicable, section 185c.

Section 185a of Law 80 provides the formula for calculating the mesada. An employee terminated without just cause after working for an employer for more than five years but fewer than fifteen is entitled to the sum of

> (a) . . . the salary corresponding to three (3) months if discharged after five years (5) . . . of service . . . [; and]
> (b) An additional progressive compensation equal . . . to two (2) weeks for each year of service, if discharged after five (5) years and up to fifteen (15) years of service . . . .

P.R. Laws Ann. tit 29, § 185a. Because severance is the exclusive remedy for a Law 80 violation, "an employer willing to pay the price is free to discharge whomever he or she pleases." Rodriguez v. E. Air Lines, Inc., 816 F.2d 24, 28 (1st Cir. 1987); Soto v. State Indus. Prods., Inc., 642 F.3d 67, 75 (1st Cir. 2011).

The district court bypassed an analysis of whether Novo Nordisk satisfied sections 185b and 185c, focusing instead on

whether plaintiffs had already received all compensation due under section 185a. The district court concluded that neither plaintiff presented evidence to show that Novo Nordisk had not already satisfied any Law 80 obligation. Martínez, 397 F. Supp. 3d at 223.

A review of plaintiffs' arguments on appeal and the summary judgment record leads us to the same conclusion.[3] Plaintiffs give no cogent explanation as to why Novo Nordisk's payments fell short. Even on appeal, plaintiffs simply assert in conclusory fashion that proper compensation for Puig "would have amounted to a larger payment and not the payment of $82,127.37 made by Novo Nordisk." Plaintiffs' brief does identify the amount Méndez seeks -- $85,880.85, rather than $67,845.96 -- but fails to explain why this sum is correct. Although plaintiffs' brief describes benefits that Méndez received in addition to cash compensation, such as employer-sponsored health coverage and employer-provided 401(k) matching contributions, the brief provides no authority to show that these benefits are part of his section 185a "salary." Plaintiffs' brief also refers to a Christmas bonus that Méndez received and paid vacation days that Méndez did not use, but the brief does not point to any record

_____

[3] This review included the portions of the record referred to in the letter that plaintiffs filed with the court pursuant to Federal Rule of Appellate Procedure 28(j).

- 15 -

evidence regarding his bonus or unused vacation. Plaintiffs have thus waived any appeal concerning their Law 80 claims. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Finally, the denial of Novo Nordisk's motion to dismiss plaintiffs' Law 80 claims did not preclude Novo Nordisk from obtaining summary judgment here. This case is one of many illustrating that a plaintiff who puts forward plausible allegations at the motion to dismiss stage may later fail to present evidence showing the existence of a triable issue of fact at summary judgment. Simply put, motions under Rules 12(b)(6) and 56 present a plaintiff with different hurdles, the latter of which looms larger than the former. See Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018) (noting that reasonable inferences at the pleading stage may become unreasonable in light of summary judgment record); Aldridge v. A.T. Cross Corp., 284 F.3d 72, 85 (1st Cir. 2002) (reversing dismissal of claims but cautioning that "[n]othing in this opinion, of course, predicts any outcome if a postdiscovery summary judgment motion is filed"); see also Ríos-Campbell v. U.S. Dep't of Com., 927 F.3d 21, 24-25

(1st Cir. 2019) (contrasting Rule 12(b)(6)'s plausibility standard with the Rule 56 standard).[4]

## III.

For the foregoing reasons, we <u>affirm</u> the district court's grant of summary judgment in Novo Nordisk's favor.

---

[4] Because Puig's Law 100 and Law 80 claims fail on the merits, we do not address Novo Nordisk's alternative argument that judicial estoppel precludes Puig from pursuing them.