# United States Court of Appeals
## For the First Circuit

No. 20-1595

ATLAS GLASS & MIRROR, INC.,

Plaintiff, Appellant,

v.

TRI-NORTH BUILDERS, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Lynch, Lipez, and Kayatta,
Circuit Judges.

Jeffrey A. Novins, with whom Howd & Ludorf, LLC was on brief,
for appellant.
Michael R. Stanley, with whom Michael J. Lambert and Sheehan
Phinney Bass & Green, PA were on brief, for appellee.

May 12, 2021

**KAYATTA**, **Circuit Judge**. This appeal concerns the applicability and enforcement of a forum selection clause in an agreement between a construction contractor and its subcontractor. Relying on that clause, the district court dismissed the subcontractor's suit against the contractor. We affirm.

**I.**

Tri-North Builders, Inc., served as general contractor on a renovation project at the Sheraton Hotel in Framingham, Massachusetts. After preliminary discussions, Atlas Glass & Mirror, Inc., a Massachusetts company, submitted a one-page proposal to supply and install Lockheed windows on the project. The proposal identified the window types, estimated prices, and specified the work, which called for the supply and installation of over 250 windows. It contained very few other terms.

Tri-North neither signed nor returned the contract proposal. Instead, it solicited and obtained Atlas's agreement to supply and install a sample Lockheed window so that Tri-North could ensure that the owner approved of the proposed choice. Tri-North sent Atlas an eight-page contract entitled "Subcontract 121210024667" (hereinafter "Subcontract 667"), governing the installation of the sample window. Dated August 28, 2012, Subcontract 667 identified the window to be installed, the work to be done, and the price. It also included thirty-one additional "Terms and Conditions," one of which specified

- 2 -

Wisconsin as the forum and venue for any litigation or arbitration. Atlas accepted this contract by signing and returning an original to Tri-North.

After Atlas installed the sample Lockheed window, it supplied and installed a sample of another manufacturer's window at Tri-North's request. Atlas then simultaneously sent two invoices to Tri-North corresponding to the two sample-window installations. Each invoice specified "Terms" as "Per Contract" and identified Subcontract 667 as the pertinent contract.

After the owner decided to use Lockheed windows for the project, Tri-North wrote to Atlas as follows:

> I will be sending a contract your way with the anticipated cost for all windows. I would imagine that we might have a few windows that we made error on during initial measure and estimate. We will correct this when you complete your field measurements to make you whole.

The parties never exchanged any new contract proposals. Instead, Atlas proceeded with the work, using the window specifications in its Lockheed proposal. As it did so, it invoiced Tri-North. Each invoice (except for one) used the pricing from the Lockheed proposal, and specified that the work was "Per Contract," identified as Subcontract 667.[1] Atlas also sent Tri-North a copy

---

[1] The single invoice that does not reference Subcontract 667 appears to relate to work involving the replacement of some mirrors rather than the installation of windows.

- 3 -

of a lien waiver for work on the project, which Atlas identified as corresponding to Subcontract 667. Atlas's president thereafter executed a sworn statement regarding a balance owed stating that Atlas "is a subcontractor to Tri-North . . . pursuant to a Subcontract dated 8/28/2012."

The parties eventually fell into disagreement over the amount and pace of payments due to Atlas. After efforts to settle failed, Atlas sued in Massachusetts Superior Court for an amount just over $88,000, which Atlas claimed was due and owing for services "performed in accordance with the Subcontract," identified by Atlas in its complaint as Subcontract 667. The complaint also sought recovery under a theory of quantum meruit and alleged a violation of Mass. Gen. Laws ch. 93A, § 11.

In short order, Tri-North removed the action to the United States District Court for the District of Massachusetts and sought to dismiss Atlas's complaint pursuant to the forum selection clause in Subcontract 667. The provision containing the clause stated that in the event of any dispute arising from Subcontract 667, Tri-North could choose whether the parties would resolve the dispute through (1) litigation, (2) the dispute resolution clause of the agreement between Tri-North and the project owner, or (3) binding arbitration in accordance with (at Tri-North's option) either Wisconsin Statutes Chapter 788 or the Construction Industry Arbitration Rules of the American

Arbitration Association then currently in effect. The provision then stated that "[f]orum and venue for any arbitration or litigation shall be Dane County, Wisconsin," and that Atlas "consents to the jurisdiction of the courts of Wisconsin." Finally, the provision stated that the Subcontract and "any dispute arising under" it "shall be governed and interpreted with the Laws of the State of Wisconsin."

Atlas opposed the motion by attempting to execute a complete about-face. It argued that the forum selection clause in the Subcontract was not applicable because the Subcontract had "no relationship to the work performed by Atlas . . . for which it is seeking to be paid." The district court denied the motion to dismiss without prejudice, directing the parties to engage in limited discovery on "the formation and terms of any contract(s) governing their relationship," which the district court deemed necessary to resolve the "factual dispute between the parties as to whether a forum selection clause was . . . a part of the parties' governing contract terms."

After discovery was completed without either side filing a motion to compel further discovery, Tri-North renewed its attempt to have the case dismissed based on Subcontract 667's forum selection clause. Rather than moving pursuant to Rule 56, Tri-North pressed a motion to dismiss pursuant to Rule 12(b)(6), filing with its motion a copy of Subcontract 667 and the invoices and

lien waivers exchanged by the parties in discovery. After reviewing those documents, the district court found the forum selection clause both applicable and binding, so it dismissed the lawsuit.

Atlas then filed a motion to amend the judgment under Fed. R. Civ. P. 59(e) or, in the alternative, for relief from the order under Fed. R. Civ. P. 60. In that motion, Atlas asked the district court to transfer the case to the United States District Court for the Western District of Wisconsin in lieu of dismissal. While the motion was pending, Atlas timely appealed the order dismissing its suit. The district court subsequently denied Atlas's motion to alter the judgment. Atlas did not file a notice of appeal as to that ruling.

**II.**

**A.**

Atlas begins with a point of procedure. It reasons that once the district court determined (properly, says Atlas) that discovery was required to resolve the factual question of whether the claims brought here arose under Subcontract 667, Rule 12 became inapt and the matter should have been addressed under Rule 56. Compare Fed. R. Civ. P. 12(d) (requiring that a Rule 12(b)(6) motion "be treated as one for summary judgment under Rule 56" if "matters outside the pleadings are presented to and not excluded by the court"), with Watterson v. Page, 987 F.2d 1,

3 (1st Cir. 1993) (noting that "courts have made narrow exceptions [to Rule 12(d)] for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint").

Even assuming that the district court should have converted Tri-North's motion to dismiss to a motion for summary judgment, we see no prejudicial error warranting remand. Atlas makes no challenge to the authenticity of the pertinent records (all from its files). In fact, it was Atlas -- not Tri-North -- which submitted the vast majority of the documents to the district court. Nor was Atlas deprived of the opportunity to conduct discovery. Contra Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 74 (1st Cir. 2014) (finding improper conversion to Rule 56 motion where district court considered a document the plaintiff had no opportunity to challenge). Even now Atlas points to no other facts that it would have offered that might have changed the result.

"[M]otions under Rules 12(b)(6) and 56 present a plaintiff with different hurdles, the latter of which looms larger than the former." Martínez v. Novo Nordisk Inc., 992 F.3d 12, 19 (1st Cir. 2021). The Rule 12(b)(6) standard is "intended to screen out claims in which the factual allegations of the complaint are too scanty or too vague to render the claims plausible," Ríos-Campbell v. U.S. Dep't of Com., 927 F.3d 21, 25 (1st Cir. 2019),

whereas the Rule 56 standard is "intended to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required,'" id. (quoting Tobin v. Fed. Express Corp., 775 F.3d 448, 450 (1st Cir. 2014)). Here, "[b]y eschewing conversion [to a Rule 56 motion], the district court ensured" a more favorable standard for Atlas. Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 n.2 (1st Cir. 1998); see Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 15-16 (1st Cir. 2009) (finding dubious but harmless the district court's use of Rule 12(b)(6) to decide a forum selection issue while also considering factual submissions outside the complaint). So if there was any procedural error -- an issue we do not decide -- it could not have prejudiced Atlas.[2]

**B.**

Turning to the merits, we must first determine whether Subcontract 667 applies to the work that gave rise to this dispute. As we noted earlier, Atlas's complaint alleged that Tri-North had yet to pay Atlas for "all of the outstanding invoices which Atlas . . . had previously submitted for work contained in the

---

[2] Atlas briefly hints in a footnote that it was prejudiced because it was deprived of further discovery. But the district court expressly allowed discovery on the contract formation issues, and never denied any motion by Atlas concerning that discovery. In other footnotes, Atlas hints that it was prejudiced because it lacked the opportunity to reply to Tri-North's contentions. We address that second argument in more depth later. See infra note 3.

scope of work in the Subcontract." Such an "assertion of fact in a pleading is a judicial admission by which [the pleader] normally is bound throughout the course of the proceeding," so long as the pleader made that assertion "clearly and unambiguously." Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., 976 F.2d 58, 61 (1st Cir. 1992) (quoting Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985)). "Unlike ordinary admissions, which are admissible but can be rebutted by other evidence, judicial admissions are conclusive on the party making them." United States v. Belculfine, 527 F.2d 941, 944 (1st Cir. 1975).

That being said, district courts do retain "broad discretion to relieve parties from the consequences of judicial admission in appropriate cases." Id. But even assuming that Atlas's spot-on admission left room for such relief, the remaining documents authored by Atlas itself eliminate that room with equally spot-on admissions. The very invoices for which Atlas seeks payment expressly identify Subcontract 667 as the applicable

agreement, and in a sworn statement, Atlas's own president affirmed that the subject work was "pursuant to" Subcontract 667.[3]

Atlas nevertheless says that a plausible reading of its complaint (along with the appropriately considered documents) is that different contract terms governed. Atlas points out that before Tri-North and Atlas entered into the Subcontract, Atlas had sent Tri-North a proposal to install the 288 Lockheed windows for the project at a total cost of $215,400.00. Atlas further notes that after the installation of the two sample windows, Tri-North's project manager sent Atlas an email stating that he would "be sending a contract your way with the anticipated cost for all windows" and that the project manager "would imagine that we might have a few windows that we made error on during initial measure and estimate." Although Atlas never received any contract like the one Tri-North's project manager promised to send, Atlas continued to do work on the project. Atlas then submitted a billing statement using the same pricing estimate for the total

---

[3] Atlas suggests that, by making it to the summary-judgment stage, it may have escaped certain admissions used against it at the motion-to-dismiss stage. If considered judicial admissions, they would bind Atlas either way. See Schott Motorcycle Supply, Inc., 976 F.2d at 61 (citing Mo. Hous. Dev. Comm'n v. Brice, 919 F.2d 1306, 1315 (8th Cir. 1990)). Even if not, the sole piece of evidence Atlas points to -- an affidavit from its president submitted in opposition to Tri-North's motion to dismiss -- would not change the outcome. The president's affidavit makes no attempt to controvert his own sworn statement or the key admissions in Atlas's complaint.

- 10 -

cost that it had included in its earlier, unsigned proposal (i.e., $215,400.00 plus the cost of the sample window).  Atlas says a reasonable inference drawn in its favor from these facts is that the terms of Atlas's proposal, and not the Subcontract's terms, applied to all the work Atlas performed beyond the sample Lockheed window.

Certainly the record would support a finding that the window specifications and pricing were as stated in the proposal, given that Subcontract 667 contains no such details and given that Atlas did work and charged prices matching those in its proposal without any pushback from Tri-North.  But that begs the question whether the terms of the subsequently exchanged and agreed-to Subcontract 667 also applied.  And as we have just described, Atlas's own statements and documents repeatedly made crystal clear that its work was "pursuant to" that subcontract.

## C.

Having determined that the only plausible reading of the complaint and the record to which Atlas points is that Subcontract 667's terms apply, we now turn specifically to the forum selection clause within Subcontract 667.  When a federal court sits in diversity, it faces a threshold question as to how to decide whether a forum selection clause is enforceable. Rafael Rodríguez Barril, Inc. v. Conbraco Indus., Inc., 619 F.3d 90, 92 (1st Cir. 2010).  Do we treat the issue of enforceability "as

- 11 -

'procedural' and look to a federal test of validity" or do we instead "treat it as 'substantive' and look to pertinent state law"? Id. The Supreme Court and our court have each reserved that question. See id. (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 25-26, 32 & n.11 (1988)); Lambert v. Kysar, 983 F.2d 1110, 1116-17, 1116 n.10 (1st Cir. 1993). We see no need to answer it today, because, in determining enforceability, both Wisconsin and Massachusetts follow the federal common-law standard. See Huffington v. T.C. Grp., LLC, 637 F.3d 18, 23 (1st Cir. 2011); Cambridge Biotech Corp. v. Pasteur Sanofi Diagnostics, 740 N.E.2d 195, 201 (Mass. 2000); Beilfuss v. Huffy Corp., 685 N.W.2d 373, 378 (Wis. Ct. App. 2005).[4]

Under that standard, we first ask whether the forum selection clause is mandatory or permissive (i.e., whether the clause requires or merely authorizes jurisdiction and venue in a designated forum). Rivera, 575 F.3d at 17. Atlas does not contest that the clause, which provides that "[f]orum and venue for any arbitration or litigation shall be Dane County, Wisconsin" (emphasis added), is mandatory. Next, we look at the scope of the clause to see whether the claims at issue fall within it. Claudio-

---

[4] See also Tuminaro v. Garland Co., No. 11-CV-203-BBC, 2011 WL 10501186, at *1 (W.D. Wis. May 6, 2011) ("[The federal common-law standard] is little different from the standards under state law, including Wisconsin." (citing Converting/Biophile Laby's, Inc. v. Ludlow Composites Corp., 722 N.W.2d 633, 639-40 (Wis. Ct. App. 2006))).

de León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 47 (1st Cir. 2014). The clause here covers "[a]ny dispute arising from" Subcontract 667, and Atlas, besides arguing that Subcontract 667 is altogether inapplicable, does not otherwise contest that its claims arise from Subcontract 667. Finally, we consider whether the clause should be enforced. In so doing, we presume that the forum selection clause is "prima facie valid" and should not be set aside absent a "strong showing" of "some reason the presumption of enforceability should not apply." Id. at 48 (first quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972); then quoting id. at 15; and then quoting Rafael Rodríguez Barril, 619 F.3d at 93). We review this issue de novo. Silva v. Encyc. Britannica Inc., 239 F.3d 385, 387 (1st Cir. 2001).

The Supreme Court has identified four possible grounds for finding a forum selection clause unenforceable:

> (1) the clause was the product of "fraud or overreaching";
>
> (2) "enforcement would be unreasonable and unjust";
>
> (3) proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court"; or
>
> (4) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."

Claudio-de León, 775 F.3d at 48-49 (alteration in original) (quoting Rafael Rodríguez Barril, 619 F.3d at 93). Although Atlas does not strictly categorize its arguments under specific grounds, they can fairly be said to focus on all four.

As to the first ground, although the term "overreaching" seems quite nebulous, we understand it to refer to "one party's unfair exploitation of its overwhelming bargaining power or influence over the other party." Rivera, 575 F.3d at 21. Atlas tells us that the difference in bargaining power between Tri-North and Atlas provides reason to hold the forum selection clause unenforceable here. Atlas stresses that it is a small company with only ten employees while Tri-North is a large contractor with revenues estimated by Atlas to be in the hundreds of millions. Such a difference in size could certainly create opportunities for leveraging unfair concessions once the parties become committed to a project. For example, the larger company likely could weather the cost of disputes much more easily.

But "the mere fact of th[e] inequality is not enough to render an agreement unenforceable." Rivera, 575 F.3d at 21. Rather, "[t]here must be some evidence that the party has exploited this bargaining power in a way that the courts will not tolerate." Id. (explaining that there must be "overweening bargaining power" (emphasis in original) (quoting Bremen, 407 U.S. 1 at 13)).

To demonstrate exploitation, Atlas points to several provisions of Subcontract 667 to suggest that Atlas was getting the raw end of the deal. For example, it notes that Subcontract 667 provides that Tri-North alone gets to choose which type of dispute resolution the parties will undergo; that Atlas was required to present all claims to Tri-North in writing within seven days of the event giving rise to them or else have the claims "deemed time barred"; and that Atlas is responsible for Tri-North's attorneys' fees in Tri-North's "defense or settlement of any claim or demand of" Atlas.[5] We certainly agree that much of this language appears one-sided. But none of it bears on the specific inquiry at hand, which requires a "focused showing" that the inclusion in the contract of the forum selection clause itself was "the product of fraud or coercion." Huffington, 637 F.3d at 24 (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974)). The absence of any indication that Atlas sought to alter or negotiate the forum selection clause does not, in and of itself, show exploitation. See Rivera, 575 F.3d at 21 (noting that "overreaching" means something more than that a contract term was not negotiated). And Atlas was not forced to sign a contract foisted upon it without time or an opportunity to obtain advice. See id. at 21-22. As the district court noted, Atlas spent nearly two weeks with

_____

[5] Save the forum selection clause, we make no comment or suggestion on the validity of the Subcontract's provisions.

- 15 -

Subcontract 667 before signing it.  See Atlas Glass & Mirror v. Tri-North Builders, Inc., No. 18-10930, 2020 WL 1323073, at *3 (D. Mass. Mar. 20, 2020).  Nor is there any indication that Tri-North forced Atlas to apply Subcontract 667's terms to the work beyond the sample window installation.  Thus, we do not see exploitation of bargaining power that would render the clause unenforceable.

Atlas next suggests that enforcement would be unreasonable and unjust because Tri-North waived its right to enforce the forum selection clause by failing to take immediate action (i.e., by initiating litigation, arbitration, or a formal dispute resolution process) in a proper forum after Atlas asked for the money it alleges Tri-North owes it.  See, e.g., Claudio-de León, 775 F.3d at 49.  Certainly, though, no law or reason requires a party to invoke a forum selection clause before the opposing party first seeks a forum contrary to that required by such a clause.[6]

Atlas next tells us that it might not be able to afford continuing the case if it were forced to litigate in Wisconsin. It points to an affidavit of its president stating that litigating this case in Wisconsin would require obtaining and educating new

_____

[6] We also do not find waiver in Tri-North's decision to remove the case to federal court before invoking the forum selection clause.  "It is well settled that the filing of a removal petition in a diversity action, without more, does not waive the right to object in federal court to the state court venue." Lambert, 983 F.2d at 1113 n.2.

counsel. But that need arises only because Atlas did not follow the forum requirement in the very contract upon which it filed this lawsuit. Atlas also points out that litigation in Wisconsin would be more expensive, take up more management time, and cause additional stress. But such cost differentials are present in almost any venue dispute, and we see no "grave" difficulty so substantial here as to warrant rendering the forum selection clause unenforceable. See Furness v. Wright Med. Tech. (In re Mercurio), 402 F.3d 62, 66 (1st Cir. 2005) (explaining that "something considerably more than the mere inconvenience of traveling to litigate in a different, even faraway foreign jurisdiction, is required to overcome a contractual agreement to do so" and that the "cost of litigation alone" will not suffice). Indeed, by contesting the terms of the contract on which it sued, Atlas has likely already spent more time and money than it would have had it filed suit initially in Wisconsin. Simply put, we are loath to find the forum selection clause unenforceable merely because Atlas chose to ignore it when filing suit. See id. (seeking "specific evidence regarding the extraordinary additional costs involved in litigating in [the designated forum] that were not foreseen by the contracting parties when they entered into the [a]greement").

Atlas finally argues that "enforcement would contravene a strong public policy of the forum in which suit is brought," the Commonwealth of Massachusetts. Bremen, 407 U.S. at 15. Atlas

notes that one of its claims, based on allegations that Tri-North engaged in "fraudulent acts and [made] material misrepresentations relative to the payment of invoices and execution of various releases and waivers," alleges unfair trade practices in violation of Mass. Gen. Laws ch. 93A, § 11. As best we can imagine, Atlas suggests that Massachusetts has a strong public policy in hearing 93A claims by virtue of having the law on its books. We do not think that alone evidences a "strong public policy" against hearing the case elsewhere. See, e.g., Cambridge Biotech Corp., 740 N.E.2d at 201-03, 201 n.7 (stating that the plaintiffs' 93A claims "should be heard in the forum selected by the parties").

To the extent Atlas suggests that a Wisconsin court may not recognize a 93A claim, that could well violate a policy declared by the Massachusetts Supreme Judicial Court. See Jacobson v. Mailboxes Etc. U.S.A., Inc., 646 N.E.2d 741, 746 (Mass. 1995) ("[I]f [another state] will not enforce violations of G.L. c. 93A and if G.L. c. 93A claims appear to have substantiality, any justification for directing the entire dispute to [that other state] is weakened."); cf. id. at 746 n.9 (leaving open whether Massachusetts courts should decline to enforce a choice-of-law provision which "purport[s] to contract away any claims under G.L. c. 93A"); Rueli v. Baystate Health, Inc., 835 F.3d 53, 61 (1st Cir. 2016) ("A forum selection clause that, in operation, would deprive an employee of substantive rights guaranteed by the

[Massachusetts] Wage Act violates public policy and is unenforceable." (quoting Melia v. Zenhire, Inc., 967 N.E.2d 580, 590 (Mass. 2012))). But Atlas makes no attempt at showing that to be the case. See Carter's of New Bedford, Inc. v. Nike, Inc., 790 F.3d 289, 291 n.1, 294 n.5 (1st Cir. 2015) (dismissing, among other claims, a 93A claim pursuant to a valid forum selection clause where there was "no suggestion . . . that the claim would not be honored in [the other state]"). "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). As such, Atlas has failed to show that Massachusetts public policy favors setting aside the forum selection clause.

Having rejected Atlas's arguments to the contrary, we uphold the validity and enforceability of the clause.

### D.

Finally, Atlas argues that the district court erred in dismissing the case instead of transferring it to the Western District of Wisconsin. Tri-North sought dismissal rather than transfer, which our circuit precedent allows. See Claudio-de León, 775 F.3d at 46 n.3. For its part, Atlas raised its request that the district court transfer the case for the first and only time in its motion to alter the judgment. The district court's order

denying that motion came after Atlas filed its appeal, and Atlas did not amend its notice of appeal or file a second one. See Fed. R. App. P. 4(a)(4)(B)(ii). We are barred from reviewing on appeal "any judgment, order or decree" in a civil case "unless notice of appeal is filed . . . after the entry of such judgment, order or decree." 28 U.S.C. § 2107(a). Accordingly, we lack jurisdiction over the district court's denial of the motion to alter the judgment. See Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 67 (1st Cir. 2005).

To the extent Atlas maintains that the district court should have considered transfer of its own accord, "[i]t is rare in a civil action to afford relief not requested in the trial court," and we discern no error in the course the district court took. United States ex rel. Pittsburgh Tank & Tower, Inc. v. G & C Enters., Inc., 62 F.3d 35, 37 (1st Cir. 1995) (per curiam). We note that in G & C Enterprises, a case involving "the validity of a forum selection clause in a construction subcontract," we briefly considered "whether the [district court's] dismissal should be affirmed or the case should be remanded for transfer to [another] district court, pursuant to 28 U.S.C. § 1406(a)," even though no party had requested such relief. Id. at 35-36. Section 1406(a) states that a court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (emphasis added).

The Supreme Court has since explained, however, that section 1406(a) does not apply in cases where, as here, venue is proper under another statutory section, and that "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on" that question.  Atl. Marine Constr. Co. v. U.S. Dist. Ct., 571 U.S. 49, 56 (2013).

## III.

For the foregoing reasons, we affirm.