# United States Court of Appeals
## For the First Circuit

No. 20-1356

GIORGIO ZAMPIEROLLO-RHEINFELDT,

Plaintiff, Appellant,

v.

INGERSOLL-RAND DE PUERTO RICO, INC.;
TRANE PUERTO RICO, INC.; TRANE PUERTO RICO, LLC,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Raúl M. Arias-Marxuach, U.S. District Judge]

Before

Howard, Chief Judge,
Thompson and Barron, Circuit Judges.

Miguel Simonet-Sierra, with whom Dora L. Monserrate-Peñagarícano, Richard J. Schell, and Monserrate Simonet & Gierbolini, LLC were on brief, for appellant.
Mariel Y. Haack, with whom Edwin J. Seda-Fernández and Adsuar Muñiz Goyco Seda & Pérez-Ochoa, P.S.C were on brief, for appellees.

May 28, 2021

**THOMPSON, Circuit Judge**. Trane Puerto Rico, LLC and its parent company, Ingersoll-Rand de Puerto Rico, Inc. (collectively "Trane") terminated the employment of Giorgio Zampierollo-Rheinfeldt ("Zampierollo") after thirty-three years of service. Zampierollo filed suit against Trane alleging wrongful termination of his employment under state law, and age discrimination under federal and state law. After discovery, Trane successfully moved for summary judgment on all of Zampierollo's claims and to exclude two documents from the summary judgment record. Zampierollo now appeals the district court's granting of both motions. We agree with Zampierollo that the district court erred by excluding the two documents from the summary judgment record. We also find that the record contains direct evidence from which a reasonable jury may conclude that Zampierollo was terminated because of his age. We therefore reverse the district court's order excluding the two documents, vacate the district court's entry of summary judgment, and remand for further proceedings.

## I.    Background

### A.    Factual Background

We review a district court's grant of summary judgment de novo, construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's

favor.  <u>Ocasio-Hernández</u> v. <u>Fortuño-Burset</u>, 777 F.3d 1, 4 (1st Cir. 2015).

Trane is a heating and air conditioning systems and services provider that does business around the world.  In 1980, Zampierollo, at the age of twenty-two, began working with Trane as a Sales Engineer in Trane's Puerto Rico office.  Zampierollo received several promotions over the course of his employment with Trane.  In 2000, Trane promoted him to District General Manager, the highest-ranking position at the Puerto Rico office.  In that capacity, Zampierollo oversaw the operations of Trane's Puerto Rico office.

By 2012, William Sekkel was the President of Trane's Latin America region.  That year, Trane divided the region into four districts -- Brazil, Mexico, Cono Sur, and North Latin America -- each with its own Vice President, and Guillermo Feria became Vice President of the North Latin America district, which included the Puerto Rico office.  Zampierollo reported directly to Feria.

At some point in 2012, Sekkel, who was older than Zampierollo, retired from the company, and María Blasé became the new President of the Latin America region.  In September 2012, Blasé and Feria visited the Puerto Rico office and met with Zampierollo to discuss the operations there.  Blasé told Zampierollo about her goal to reduce the company's selling,

general, and administrative ("SG&A") expenses, including those at the Puerto Rico office.

In 2013, Feria retired from the company. In mid-May of that year, Enrique Flefel ("Flefel"), who had been the Business Leader[1] of Trane's Chile office, was promoted to Vice President of the North Latin America region. Hence, Flefel, who was eight years younger than Zampierollo, became Zampierollo's direct supervisor.

Although the Puerto Rico office was profitable, Flefel believed that its SG&A expenses were too high, and its sales were below target. He thus asked Zampierollo to take cost-reducing measures, such as renegotiating the office's lease agreement, lowering the cost of employee benefits, and cutting the marketing budget. Zampierollo successfully implemented some cost-reducing measures, such as the extension of a tax exemption for the office lease, which reduced the office's SG&A expenses by $500,000. According to Flefel, however, the cost reductions obtained were not enough, and he decided to also implement a reduction in force. The reduction in force would come together with a "new structure" for the Puerto Rico office. As part of this reduction in force and reorganization, Flefel decided to eliminate Zampierollo's position and create two heads at the same level: a Business Leader,

---

[1] Trane uses the terms "Business Leader" and "Business Director" interchangeably.

-4-

who would be dedicated to business and revenue (sales), and an Operations Leader, focused on fulfillment and operation of the office. This two-headed structure was similar to the one already in place at Trane's Chile office before Flefel was promoted to Vice President of the Latin American region.[2] Flefel also decided to eliminate the position of Operations Manager, one Construction Project Manager position, and one Administrative Assistant position. At the time, a fifty-five-year-old occupied the position of Operations Manager, a fifty-one-year-old held the position of Construction Project Manager, and a woman in her mid-twenties occupied the Administrative Assistant position. Blasé and Trane's Human Resources Leader for the North Latin America region approved Flefel's reorganization plan. The management of the Puerto Rico office, including the Puerto Rico District Finance Leader, did not participate in the decision. Trane projected that the elimination of the four positions selected for the reduction in force would bring savings in salary of approximately $525,000 per year.

After reviewing the organizational chart and several Human Resources documents regarding current employees, Flefel selected Sergio Sanjenis for the position of Business Leader and Juan Carlos Teruel for the position of Operations Leader. Sanjenis

---

[2] The parties dispute whether this two-headed structure had been successful at the Chile office.

and Teruel are ten and sixteen years younger than Zampierollo, respectively. On September 23, 2013, Flefel informed Zampierollo of his termination, effective as of September 30, 2013. Zampierollo was fifty-five years old at the time. On September 30, 2013, the remaining three employees impacted by the reduction in force were terminated. That same day, Flefel informed the Puerto Rico office employees about the organizational changes. Zampierollo's duties were distributed between Sanjenis and Teruel, with Flefel's support. Both Sanjenis and Teruel received a salary increase upon assuming their new roles. The changes also required the hiring of additional management personnel: a Logistics Manager and a Parts Manager. By November 7, 2013, Trane had already contemplated hiring for these two new positions, and it filled the positions in March and June 2014.[3]

B. **Procedural History**

On May 23, 2014, Zampierollo filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Trane

---

[3] The parties dispute whether Trane achieved its goal of reducing expenses by implementing the reduction in force. While Trane claims that the Puerto Rico office lowered its SG&A expenses from 2013 to 2014, Zampierollo points to deposition testimony from Puerto Rico District Finance Leader, Brenda Fuentes, stating that salaries and wages increased from 2013 to 2014 due to the raises given to Sanjenis and Teruel and the hiring of the two additional managers. At trial, such evidence would be relevant to the issue of pretext. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000).

alleging age-based discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. Seven months later, the EEOC issued a right-to-sue letter. Thereafter, on March 18, 2015, Zampierollo filed a complaint against Trane in the U.S. District Court for the District of Puerto Rico.

In his complaint, Zampierollo asserted claims for: (1) age discrimination under the ADEA; (2) age discrimination under Puerto Rico's general antidiscrimination statute, Act No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §§ 146-151 ("Law 100"); and (3) unjust discharge under Puerto Rico's Unjust Discharge Act, Act No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29, §§ 185a-185m ("Law 80"). After discovery, Trane moved for summary judgment, seeking the dismissal of all claims. Zampierollo filed an opposition to Trane's motion for summary judgment accompanied by several supporting documents. In response, Trane moved to strike two of those documents on the grounds that they had been produced to Trane after the discovery cut-off date and that they had not been properly authenticated.[4]

---

[4] Although Trane initially moved to strike three documents, Zampierollo voluntarily withdrew one of them. There is no issue on appeal regarding that third document.

On February 21, 2020, the district court issued two opinions and orders. In the first, the district court granted Trane's motion to strike the documents submitted by Zampierollo as Exhibit 5 (the Chile office "Business Overview") and Exhibit 10 (the Puerto Rico office "2013 Financial Summary") of his opposition to summary judgment. Zampierollo-Rheinfeldt v. Ingersoll-Rand de P.R., Inc., No. 15-1255-RAM, 2020 WL 881011, at *7 (D.P.R. Feb. 21, 2020). The district court precluded Zampierollo from using these documents under Federal Rule of Civil Procedure 37(c)(1) because Zampierollo had disclosed them to Trane after the discovery cut-off date and, according to the court, Zampierollo had failed to show that his belated disclosure of the documents was substantially justified or harmless. Id. at *4-7.

In its second opinion and order, the district court granted Trane's motion for summary judgment. Zampierollo-Rheinfeldt v. Ingersoll-Rand de P.R., Inc., No. 15-1255-RAM, 2020 WL 882174, at *13 (D.P.R. Feb. 21, 2020). Analyzing Zampierollo's age discrimination claims under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), the district court determined that Zampierollo had failed to establish the fourth prong of a prima facie case of age discrimination -- i.e., that Trane "either failed to treat age neutrally or that [it] replaced him with a younger employee." Id.

-8-

at *8, *12. The court reasoned that Zampierollo had not been replaced because his position as District General Manager had been eliminated and his functions had been redistributed amongst Sanjenis and Teruel, who had "absorbed [Zampierollo]'s duties in addition to other duties and responsibilities that were assigned to them as part of their new roles as Business Director and Services Operations Leader, respectively." Id. at *8. The court also determined that Trane's reduction in force was "age-neutral facially and as applied." Id. at *10. It stated that the fact that three out of the four employees terminated as part of Trane's reduction in force were over fifty years old "should not be interpreted to mean that [Trane] had an ageist and discriminatory animus." Id. (emphasis omitted). It further determined that "there was a higher percentage of employees in the protected age group after the [reduction in force] than before [it]." Id. at *10.

Assuming arguendo that Zampierollo had successfully established a prima facie case of age discrimination, the court then examined whether Trane had articulated a legitimate, non-discriminatory reason for its decision to terminate Zampierollo. Id. at *11. The court found that Trane's proffered reason -- that Zampierollo had been terminated due to a reduction in force implemented as part of a reorganization of the Puerto Rico office

to reduce expenses -- was non-discriminatory and sufficient to satisfy the second prong of McDonnell Douglas, thus shifting the burden back to Zampierollo.  Id.

Next, the district court found that the record was devoid of any evidence from which a reasonable jury could infer that Trane's articulated reason for terminating Zampierollo's employment was pretextual, let alone a pretext for age discrimination.  Id. at *11-12.  Therefore, the court dismissed Zampierollo's age discrimination claim under the ADEA.  Id. at *12.

The district court then turned to Zampierollo's local age discrimination claim.  It noted that, although the ADEA and Law 100 differ "with respect to how the burden-shifting framework operates," "on the merits, age discrimination claims asserted under the ADEA and under Law No. 100 are coterminous."  Id. at *12 (first quoting Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 18 (1st. Cir. 2007); and then quoting Reyes Caballero v. Oriental Bank, No. 16-2952-GAG, 2019 WL 6330812, at *13 (D.P.R. Nov. 25, 2019)).  Accordingly, the district court concluded that Zampierollo's "Law 100 claim fail[ed] for the same reason that his ADEA claim failed."  Id.

Finally, the court also summarily dismissed Zampierollo's unjust discharge claim under Law 80, concluding that

-10-

Zampierollo's termination had been with "just cause," as that term is defined in Law 80. Id. at *13. The court determined that Trane had "provided evidence that restructuring was necessary for the solvency of [its] Puerto Rico office." Id. It reasoned that because Zampierollo was the only employee in his occupational classification and he had not been replaced by anyone, Trane did not have to follow Law 80's preferential treatment rule, which generally requires an employer undergoing a reorganization or downsizing to "give preference to those employees within the same occupational classification who have greater . . . seniority with the employer." Id. (citing P.R. Laws Ann. tit. 29, § 185c). Accordingly, the court granted summary judgment on all of Zampierollo's claims. Id. Zampierollo filed a timely appeal.

## II. Discussion

### A. Motion to Strike

As noted, once Zampierollo filed an opposition to Trane's motion for summary judgment, Trane moved to strike documents that Zampierollo had submitted in connection with his opposition, specifically Exhibit 5 (the Chile office "Business Overview") and Exhibit 10 (the Puerto Rico office "2013 Financial Summary"). Trane argued that Zampierollo had produced these two documents after the discovery cut-off date and that the documents were not properly authenticated.

-11-

The district court granted Trane's motion and precluded Zampierollo from using them.  Zampierollo-Rheinfeldt, 2020 WL 881011, at *7.  After analyzing the factors (which we'll review with you momentarily) outlined in Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 78 (1st Cir. 2009), the court concluded that "[m]ost of [those factors] favor[ed] exclusion of Exhibits 5 and 10" and Zampierollo had failed to show that the belated disclosure of those exhibits was either justified or harmless.  Zampierollo-Rheinfeldt, 2020 WL 881011, at *7.

Federal Rule of Civil Procedure 26 requires a party to disclose all documents that it may use to support its claims or defenses, and all evidence that it may present at trial, unless their purpose is "solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(ii), (a)(3)(A).  Further, the party must also "supplement or correct its disclosure or response [to an interrogatory, request for production, or request for admission] . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A).

Failure to properly disclose triggers Rule 37(c)(1): incomplete or late disclosures may preclude a party from using "that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

-12-

justified or is harmless." Fed. R. Civ. P. 37(c)(1). "[I]n the absence of harm to a party, a district court may not invoke the severe exclusionary penalty provided for by Rule 37(c)(1)." Cruz-Vázquez v. Mennonite Gen. Hosp., Inc., 613 F.3d 54, 58 n.1 (1st Cir. 2010). Furthermore, even when there is harm to a party, "[p]reclusion is not strictly required." Lawes v. CSA Architects & Eng'rs LLP, 963 F.3d 72, 91 (1st Cir. 2020). Instead, "[w]hen noncompliance occurs, the ordering court should consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation." Id. (quoting Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003)); see also Esposito, 590 F.3d at 78 ("[D]istrict courts have broad discretion in meting out [discovery] sanctions" and "may choose a less severe sanction." (first alteration in original) (citations omitted)).

When reviewing a district court's decision precluding evidence as a sanction, we consider an array of factors, including: the history of the litigation; the proponent's need for the precluded evidence; the justification (or lack of one) for the late disclosure; the opponent-party's ability to overcome the adverse effects of the late disclosure (surprise and prejudice); and the late disclosure's impact on the district court's docket. Esposito, 590 F.3d at 78 (citing Macaulay v. Anas, 321 F.3d 45, 51

(1st Cir. 2003)).  Because "district courts are generally in a better position to determine the propriety of a particular sanction," we review the district court's choice for abuse of discretion.  Id.  An "[a]buse of discretion 'occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.'"  Lawes, 963 F.3d at 90 (quoting Fashion House, Inc. v. K mart Corp., 892 F.2d 1076, 1081 (1st Cir. 1989)).

On appeal, Zampierollo primarily argues that he did not have to disclose the documents constituting Exhibits 5 and 10 because they fell within the exception for materials that are presented solely for impeachment purposes.  According to Zampierollo, the documents at issue show that, contrary to Flefel's contentions, the Chile office was "far from successful" and that the Puerto Rico office had been profitable while under Zampierollo's direction.  Thus, he says, it made no sense to replicate the Chile office's two-headed structure in Puerto Rico. Zampierollo posits that, because he had no duty to disclose impeachment evidence, the preclusion sanction was unwarranted. See Klonoski v. Mahlab, 156 F.3d 255, 269-70 (1st Cir. 1998) (noting that evidence that is presented "solely for impeachment purposes" is not subject to discovery under Rule 26(a)).  Because

Zampierollo did not make this argument below, it is forfeited, and our review would be for plain error only. See Hoolahan v. IBC Advanced Alloys Corp., 947 F.3d 101, 114 (1st Cir. 2020) ("Arguments 'debuted on appeal' are deemed 'forfeited' and therefore engender plain error review." (quoting Nat'l Fed'n of the Blind v. Container Store, Inc., 904 F.3d 70, 85 (1st Cir. 2018))); Dávila, 498 F.3d at 14 & n.2 (explaining that an argument not raised below is "forfeited" and reviewed for plain error). We, however, bypass the issue because Zampierollo's fallback argument provides alternative grounds for reversal. We thus turn to Zampierollo's alternative argument.

"Rule 37(c)(1) contains a narrow escape hatch that allows the court to admit belatedly proffered . . . evidence if the proponent's failure to reveal it was either substantially justified or harmless." Lohnes v. Level 3 Commc'ns, Inc., 272 F.3d 49, 60 (1st Cir. 2001). Here, the district court's discussion of Zampierollo's justification and the alleged prejudice to Trane in its consideration of the Esposito factors reflects that the court found that neither branch of the exception applied. Zampierollo contests that finding.

Regarding Zampierollo's justification for his late disclosure of the documents, the court rejected his contention that the documents "only became relevant once [Trane] allegedly

-15-

referenced Chile's organizational structure for the first time in [its] Motion for Summary Judgment." Zampierollo-Rheinfeldt, 2020 WL 881011, at *4. The court noted that Chile's organizational structure was not mentioned for the first time in Trane's motion for summary judgment, but rather in Flefel's deposition, which took place before the discovery cut-off date. Id. The court also noted that Zampierollo's assertion that he had "access" to the documents at issue because of his role with Trane and that he had found them after "conduct[ing] a search" showed that he could have obtained and produced the documents before discovery closed. Id. at *4-5. In addition, the court found that the fact that Trane might have also had access to the documents did not justify Zampierollo's failure to timely disclose them to Trane because he had an independent duty to disclose the documents he would use as evidence. Id. at *5. Faced with this rational explanation, we discern no abuse of discretion in the court's finding that Zampierollo's failure to disclose the documents to Trane was not substantially justified.

We therefore turn to the remaining out in the escape hatch: "whether the late disclosure, though not justified, was nonetheless harmless." Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 197 (1st Cir. 2006). Adopting the contentions put forward by Trane, the district court found that Trane would be

-16-

prejudiced by Zampierollo's late disclosure of the documents because Trane "had already submitted a summary judgment motion premised on evidence provided by both parties before the discovery cut off" and, if the documents constituting Exhibits 5 and 10 were admitted, "discovery might have to be re-opened, years after it already closed on November 30, 2015." Zampierollo-Rheinfeldt, 2020 WL 881011, at *6. Zampierollo challenges this finding. He argues that, contrary to the district court's conclusion, preclusion was not justified because Trane suffered no prejudice by the late disclosure, and that Trane's discovery argument is a "red herring" because the "documents [were] generated by and through their operations and procedures." He posits that an "inability to defend [one]self is the crux of any prejudice analysis" and Trane was able to defend itself. He notes that, even before the district court ruled on Trane's motion to exclude the documents at issue, Trane was able to file a lengthy reply to his opposition to summary judgment, in which Trane addressed the facts proposed by Zampierollo and supported by the documents at issue, and "pointed to the economic data that allegedly supported [its] decision to restructure [its Puerto Rico] operations." We agree with Zampierollo that the late disclosure of the two exhibits was harmless.

-17-

The fact that a motion for summary judgment has already been filed does not necessarily mean that a late disclosure cannot be harmless. Instead, given our totality-of-circumstances approach to our sanctions review, we necessarily determine whether a late disclosure is harmless on a case-by-case basis. González-Rivera v. Centro Médico del Turabo, Inc., 931 F.3d 23, 27 (1st Cir. 2019). Here, the documents at issue were the Chile office "Business Overview" from 2010, 2011, and 2012 (Exhibit 5) and the Puerto Rico office "2013 Financial Summary" (Exhibit 10). In its motion for summary judgment, Trane's articulated non-discriminatory reason for terminating Zampierollo was that he had been selected for a reduction in force implemented as part of a reorganization of the Puerto Rico office. Trane further explained that this reorganization followed the two-headed business model that had been used in its Chile office under Flefel's direction and which had proven to be successful. At oral argument, Trane clarified that, despite having used this two-headed model in some of its offices located in other countries, its motion for summary judgment focused on Chile because Flefel had previously served as the Business Director (one of the two heads) of the Chile office and he was "extremely familiar with this model and he deemed it appropriate" for the Puerto Rico office. In light of the record before us, and considering that the belated documents were from

-18-

the Chile office, from a period in which Flefel was directing that office, that it was Flefel who decided to replicate that business model in Puerto Rico, that Trane had access to Flefel for assistance in replying to Zampierollo's opposition to Trane's motion for summary judgment, that, in fact, Trane filed a thorough reply in which it addressed Zampierollo's claim of pretext, and that Trane has not explained why it would require additional discovery given that any other documents relevant to the argument for which Zampierollo has invoked Exhibit 5 are presumably within its control, we are hard-pressed to understand exactly how Trane was prejudiced by the belated disclosure of the documents in Exhibit 5.

Regarding Exhibit 10, Trane does not dispute Zampierollo's contention that it is "substantially the same" as a document submitted by Trane with its motion for summary judgment. The district court accepted this representation from Zampierollo but determined that it cut against him because it showed that Zampierollo did not need to rely on the document, i.e., he could rely on Trane's document to make his point. Zampierollo-Rheinfeldt, 2020 WL 881011, at *4. If, as everyone seems to agree, Zampierollo's Exhibit 10 is substantially the same as a document that Trane itself submitted with its motion for summary judgment, then we fail to see how Trane could have been prejudiced by

Zampierollo's late disclosure of a document which Trane had already factored into its own case strategy. Just because Zampierollo used the document to support a different argument does not demonstrate prejudice.

Because, in the absence of harm to Trane, the district court should not have applied the "severe exclusionary penalty provided for by Rule 37(c)(1)," Cruz-Vázquez, 613 F.3d at 58 n.1, we reverse the district court's preclusion of the documents constituting Exhibits 5 and 10 to Zampierollo's opposition to summary judgment.[5] Since the district court did not address, and the parties did not brief, Trane's alternative argument that the documents constituting Exhibits 5 and 10 also warranted exclusion from the summary judgment record because they allegedly were not properly authenticated, we express no opinion on the matter. See Joseph v. Lincare, 989 F.3d 147, 155 & n.4 (1st Cir. 2021).[6]

## B. Summary Judgment

We next turn to the district court's grant of Trane's motion for summary judgment. Summary judgment may be granted only

---

[5] Zampierollo also challenges the district court's weighing of some of the other Esposito factors against him. In light of our ruling, however, we find it unnecessary to address these additional arguments.

[6] We pause to note that even without Exhibits 5 and 10, Zampierollo put forth enough evidence to avoid the summary judgment axe as we'll discuss next.

-20-

when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 68 (1st Cir. 2015) (quoting Barclays Bank PLC v. Poynter, 710 F.3d 16, 19 (1st Cir. 2013)); Fed. R. Civ. P. 56(a).  A genuine dispute is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party."  Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).  "Facts are material when they have the 'potential to affect the outcome of the suit under the applicable law.'"  Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

### 1.  ADEA Claim

The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  In a wrongful discharge case under the ADEA, the plaintiff bears the burden of proving by a preponderance of the evidence that his age was the "determinative factor in his discharge, that is, that he would not have been fired but for his

age." Freeman v. Package Mach. Co., 865 F.2d 1331, 1335 (1st Cir. 1988); see also Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009).

A plaintiff may use either direct or circumstantial evidence to prove his ADEA claim. See Gross, 557 U.S. at 177-78; Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 24 (1st Cir. 1998). If the plaintiff "provides direct evidence of discrimination, the issue may be put to a finder of fact without further ado." Alvarez-Fonseca, 152 F.3d at 24. If the plaintiff, however, does not provide direct evidence of discrimination, we apply the familiar burden-shifting framework outlined in McDonnell Douglas Corp., 411 U.S. at 802-05, which has been adopted for ADEA cases, Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995). Under the McDonnell Douglas framework, a plaintiff who was terminated as part of a reduction in force has the initial burden of establishing a prima facie case by showing that: (i) he was at least forty years old at the time of his termination; (ii) he was meeting the employer's legitimate performance expectations; (iii) he was terminated from his employment; and (iv) "the employer did not treat age neutrally or that younger persons were retained in the same position."[7] LeBlanc v. Great Am. Ins. Co., 6 F.3d 836,

---

[7] If the plaintiff's termination was not part of a reduction in force, the plaintiff must demonstrate under the fourth prong that he "was replaced by a person with roughly equivalent

842 (1st Cir. 1993) (quoting <u>Hebert</u> v. <u>Mohawk Rubber Co.</u>, 872 F.2d 1104, 1111 (1st Cir. 1989)). "This burden is not onerous." <u>Caraballo-Caraballo</u> v. <u>Corr. Admin.</u>, 892 F.3d 53, 57 (1st Cir. 2018).

If the plaintiff establishes his prima facie case, "the burden of production -- but not the burden of persuasion -- shifts to [the employer], who must articulate a legitimate, non-discriminatory reason" for its action. <u>Theidon</u> v. <u>Harvard Univ.</u>, 948 F.3d 477, 495 (1st Cir. 2020) (quoting <u>Johnson</u> v. <u>Univ. of P.R.</u>, 714 F.3d 48, 53-54 (1st Cir. 2013)); <u>see also</u> <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802. If the employer articulates such a reason, the burden shifts back to the plaintiff, who must then show, by a preponderance of the evidence, that the employer's proffered reason for the adverse employment action was pretextual, and "that age was the 'but-for' cause of the employer's adverse action." <u>Vélez</u> v. <u>Thermo King de P.R.</u>, 585 F.3d 441, 447-48 (1st Cir. 2009) (quoting <u>Gross</u>, 557 U.S. at 177).

Zampierollo makes three primary arguments regarding his ADEA claim. First, Zampierollo argues that despite having put forth direct evidence of age discrimination, which was enough in

---

job qualifications." <u>LeBlanc</u> v. <u>Great Am. Ins. Co.</u>, 6 F.3d 836, 842 (1st Cir. 1993). However, "if the job loss was part of a reduction in force, the plaintiff need not show replacement by someone with equivalent job qualifications." <u>Id.</u>

-23-

itself to survive summary judgment, the district court failed to consider it as direct evidence and, instead, analyzed such evidence "within the confines of the McDonnell-Douglas framework." Second, Zampierollo posits that, even assuming arguendo that the record does not contain direct evidence of age discrimination, the district court nevertheless erred in determining that he failed to establish a prima facie case of age discrimination under the ADEA. Third, Zampierollo contends that the district court improperly concluded that the summary judgment record is devoid of evidence from which a reasonable jury could find that Trane's articulated reasons for dismissing him were pretextual and that Trane's actions derived from ageist discriminatory animus. We address Zampierollo's arguments in turn.

Zampierollo points us to evidence which he claims qualifies as direct evidence of Trane's ageist discriminatory animus, but which the district court failed to consider as such. This evidence consists of Zampierollo's deposition testimony to the effect that at the time of his termination, Flefel told him that Zampierollo's employment was being terminated because Trane: wanted to "rejuvenate the region," was seeking the "rejuvenation of the team," was "rejuvenating the management," and was

"rejuvenating the management team,"[8] in addition to wanting to reduce its costs.

"Direct evidence is evidence which, in and of itself, shows a discriminatory animus." Jackson v. Harvard Univ., 900 F.2d 464, 467 (1st Cir. 1990). It "consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." Febres v. Challenger Caribbean Corp., 214 F.3d 57, 60 (1st Cir. 2000); see also Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996) (stating that the remarks or comments must be linked to the adverse employment decision); France v. Johnson, 795 F.3d 1170, 1173 (9th Cir. 2015) ("Direct evidence, which standing alone can defeat summary judgment, must be evidence directly tied to the adverse employment decision."). "[S]tray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself" do not qualify as direct evidence. Ayala-Gerena, 95 F.3d at 96; see also Patten v. Wal-Mart Stores E., Inc., 300 F.3d 21, 25 (1st Cir. 2002) (noting that "mere background noise" and "stray remarks" do not qualify as direct evidence). Although "'direct evidence is relatively rare,' . . . that burden is not

---

[8] For simplicity, where appropriate, we refer to these variants as Flefel's "rejuvenation" statement.

insurmountable."  Patten, 300 F.3d at 25 (quoting Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 580 (1st Cir. 1999)).

Viewing the evidence put forth by Zampierollo in the light most favorable to him, as we must at this stage, we conclude that it qualifies as direct evidence of age discrimination.  It is uncontested that Flefel was the key managerial employee who decided to terminate Zampierollo, a fifty-five-year-old employee who had no performance issues.  According to the evidence Zampierollo relies on, upon being informed of his termination, Zampierollo specifically asked Flefel why he was being terminated, to which Flefel allegedly responded that Trane was terminating him because it wanted to "rejuvenate" the team/management/region and lower costs.  A reasonable jury could construe this evidence as an admission by the decision-making employer that it decided to terminate Zampierollo's employment because of his age inasmuch as it wanted a younger workforce.  This Circuit, as well as others, has held that similar evidence qualifies as direct evidence. See, e.g., Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 171 (1st Cir. 1998) (citing with approval a Seventh Circuit opinion holding that a "[c]omment by [a] supervisor that the plaintiff's 'accounts could use some younger blood' constituted sufficient direct evidence of discriminatory intent" (quoting EEOC v. G-K-G, Inc., 39 F.3d 740, 746 (7th Cir. 1994))); see also Ezell v. Potter, 400 F.3d 1041,

1051 (7th Cir. 2005) (finding that employer's statement to a new hire that they intended "to get rid of older carriers and replace them with younger, faster carriers" constituted direct evidence of discriminatory intent).

Trane, however, submits that Zampierollo's deposition testimony about Flefel's "rejuvenation" statement does not qualify as direct evidence of age discrimination for several reasons. None of those reasons passes muster. First, Trane argues that Zampierollo's deposition testimony does not constitute direct evidence because Zampierollo allegedly could not remember at his deposition "what Mr. Flefel said or what words he used" when explaining to Zampierollo why Trane was terminating his employment. Trane further argues that because Zampierollo "isn't even sure [if the statement] was ever made," Flefel's alleged "rejuvenation" statement "should be disregarded."

Trane's argument is premised on a misconstruction of the record. During his deposition, Trane's counsel repeatedly asked Zampierollo about the reasons provided by Flefel for Trane's decision to terminate Zampierollo's employment. Faced with these questions, Zampierollo consistently testified that Flefel told him "basically [that they] were going to rejuvenate the region, and the costs were too high and . . . had to be lowered." Trane's counsel, in an apparent attempt to steer Zampierollo away from the

-27-

"rejuvenation" statement, stated, "So, if I understand you correctly, the stated reason for your termination was reduction in costs?" Refusing to take the bait, Zampierollo responded, "[r]eduction in costs and rejuvenation of the team, of the region." A little later in the deposition, Trane's counsel stated, "I'm asking you about a specific conversation in connection with your termination. And, the question was whether, during that conversation with Mr. Enrique Flefel, you discussed anything else, aside from what you just testified?" Zampierollo again responded, "[n]o, it was basically or emphatically '[t]his is a reduction in cost, and we're rejuvenating the management.'" Finally, Zampierollo concluded that "[he] was taken out because of [his] age." This statement prompted Trane's counsel to ask him, "and you reached that conclusion on your own?," to which Zampierollo responded, "I reached that conclusion when I hear the bells, like we're rejuvenating the management team and all that, so I get it. And, when I look at everything that happened, who was fired with me . . . ."

This testimony does not support Trane's allegations that Zampierollo did not remember what Flefel told him regarding Trane's motivations for terminating him or that Zampierollo was not "even sure" whether Flefel had informed him that his termination was due to Trane's desire to rejuvenate the team/management/region. To

-28-

the contrary, Zampierollo's testimony was consistent throughout his deposition and he was adamant that Flefel had mentioned that Trane's desire to rejuvenate its workforce was the reason behind its decision to terminate Zampierollo. We note that at his deposition, after Zampierollo quoted Flefel as having said that "we're rejuvenating the management," Trane's counsel asked Zampierollo, "did Mr. Enrique Flefel specifically say the word[s] 'rejuvenating' the workforce?," to which Zampierollo responded that he did not remember "[t]he specific words" used by Flefel. This exchange occurred shortly after Zampierollo had cited Flefel as having said that Trane was "going to rejuvenate the region," and was doing a "rejuvenation of the team," and after quoting him as saying that Trane was "rejuvenating the management." Despite not remembering whether Flefel's exact words were "rejuvenate the region," "rejuvenation of the team," "rejuvenating the workforce," or "rejuvenating the management," his testimony was unequivocal that Flefel's statement as to the reason that he was terminated included the use of the word "rejuvenate" and so the only possible uncertainty he acknowledged as to what he recalled Flefel to have said concerned whether the statement was referring to the "region," "team," "workforce," or "management." See Ocasio-Hernández, 777 F.3d at 4 (stating that on summary judgment we construe the record in the light most favorable to the nonmovant and resolve all

-29-

reasonable inferences in that party's favor). Furthermore, "a witness's lack of memory normally generates simply a credibility issue for the factfinder." United States v. Rojas-Tapia, 446 F.3d 1, 6 (1st Cir. 2006); Febres, 214 F.3d at 60 n.3 (stating that direct evidence "does not require that the plaintiff produce evidence that the court finds persuasive" and "credibility determinations in respect to direct evidence are for a properly instructed jury, not for the judge"); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting that, in deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," and "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970))).

Second, Trane argues that Zampierollo's deposition testimony about Flefel's "rejuvenation" statement does not constitute direct evidence of age discrimination because Zampierollo allegedly admitted to being "speculating as to the motives for his termination." This argument is also based on a misreading of the record.

At Zampierollo's deposition, when Trane's counsel tried to limit his testimony about Flefel's stated reasons for his

termination to "reduction in costs," Zampierollo clarified that Flefel's stated reasons were "[r]eduction in costs and rejuvenation of the team, of the region." Zampierollo then expanded on his response by adding,

> We needed change. We needed change probably of . . . I'm one of the old guards there. I was part of all what came from William Sekkel, from Guillermo Feria, from everyone else, and this is, if you want to call it . . . I don't know. I'm speculating there.

(alterations in original). When read in context, it is clear that Zampierollo's statement that he was speculating was related to his explanation regarding the need for change and not to Flefel's stated reasons for his termination. Zampierollo consistently testified throughout his deposition that Flefel had "emphatically" informed him that he was being terminated from his employment because of Trane's desire to rejuvenate its team/management/region.

Trane next posits that Zampierollo's testimony about Flefel's "rejuvenation" statement does not qualify as direct evidence because Zampierollo did not mention any ageist comments in his complaint or move to amend his complaint "even after his deposition was taken," and because he allegedly waited until after Trane had moved for summary judgment to come up with a new legal theory. Here, we are reviewing the district court's resolution of a motion for summary judgment, not of a motion to dismiss, where

our review would be limited to the well-pleaded facts alleged in the complaint. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011). Our review of the district court's resolution of a motion for summary judgment entails consideration of the evidence in the summary judgment record, which includes deposition testimony pointed to by the parties. See Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 19 (1st Cir. 2004) (noting that "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact and that the moving party is entitled to a judgment as a matter of law'" (quoting Fed. R. Civ. P. 56(c))). Accordingly, we are not constrained to the facts specifically alleged in the complaint -- facts which generally must give the defendant only "fair notice" of what the plaintiff's claim is and the grounds upon which it rests. See Ocasio-Hernández, 640 F.3d at 8. After the complaint is filed, discovery then allows the parties to learn of the scope of the evidence supporting the opposing party's contentions. Here, Zampierollo's complaint gave Trane fair notice of his age discrimination claims and the grounds upon which those claims rested. He specifically alleged in his complaint that Trane terminated his employment because of his age, and replaced him with two younger employees as "part of [its]

strategy to eliminate senior employe[es] and substitute them with younger employees."  During discovery, Trane then had the opportunity to inquire about the scope of the evidence supporting Zampierollo's contentions.  The evidence obtained during discovery could become part of the summary judgment record even if this evidence was not specifically referenced in the complaint.

Furthermore, Trane's argument that we should disregard the evidence about Flefel's "rejuvenation" statement because Zampierollo allegedly waited "until he was faced with a well-reasoned motion for summary judgment" to come up with a new legal theory is preposterous.  Zampierollo's legal theory has remained consistent throughout the litigation.  Zampierollo testified about Flefel's "rejuvenation" statement at his deposition, well before Trane filed its motion for summary judgment.  In fact, many of the facts included in Trane's motion were supported by the transcript of Zampierollo's deposition.  Zampierollo then opposed summary judgment citing his deposition testimony.  Contrary to Trane's contentions, this simply is not a case in which the plaintiff waited until a properly supported motion for summary judgment had been filed to come up with a sham affidavit, new evidence of discrimination not previously disclosed during discovery, or a new theory.

Trane also argues that Zampierollo's deposition testimony about Flefel's "rejuvenation" statement does not constitute direct evidence of age discrimination because Flefel's statement was "inherently ambiguous" and subject to two different interpretations -- one discriminatory and the other benign -- and Zampierollo had "failed to put forth any evidence that could put the alleged comment in further context."

Statements that are "inherently ambiguous" do not qualify as direct evidence. Patten, 300 F.3d at 25 (quoting Fernandes, 199 F.3d at 583); Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 329 (1st Cir. 1996) ("Isolated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent."). A statement is inherently ambiguous if, viewed in context, it is subject to be interpreted in a benign, non-discriminatory way. See Patten, 300 F.3d at 25-26. The fact that a jury would not be compelled to find a statement was direct evidence of discrimination does not make it inherently ambiguous so long as a jury could conclude it was. An "inherently ambiguous" statement is not susceptible of being reasonably found to be direct evidence precisely because its inherently ambiguous nature would make such a characterization of it merely speculative.

In support of its contention that Flefel's "rejuvenation" statement is inherently ambiguous, Trane cites the

Cambridge Dictionary's alternate definition of "rejuvenation." Although the Cambridge Dictionary first defines "rejuvenation" as "to make someone look or feel young and energetic again," Trane notes that it also defines "rejuvenation" as "to make an organization or system more effective by introducing new methods, ideas, or people." Rejuvenation, Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/rejuvenate (last visited on May 27, 2021). According to Trane, this alternate definition is "wholly benign and unrelated to age," which makes the word inherently ambiguous. Trane, however, fails to acknowledge that even the usage example given for this alternate definition of "rejuvenation" is age-based: "He has decided to rejuvenate the team by bringing in a lot of new, young players." Id. (emphasis added). Other dictionaries likewise associate "rejuvenation" with age. See Rejuvenate, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/rejuvenate (last visited May 27, 2021) (defining "rejuvenate" as "to make young or youthful again" and explaining that "rejuvenate" stems from the Latin "juvenis," meaning "young"); Rejuvenation, Dictionary.com, https://www.dictionary.com/browse/rejuvenation (last visited May 27, 2021) (defining "rejuvenation" as "the act of making someone young again or restoring them to youthful vigor" or "the act of making something new and fresh, or restoring it to

-35-

a former better state"). Furthermore, the context in which the statement is made informs our decision on whether the statement is inherently ambiguous or not. See Patten, 300 F.3d at 25-26; Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 434 (1st Cir. 2000). And, contrary to Trane's contention, Flefel's "rejuvenation" statement was neither isolated nor ambiguous, when viewed in context. The statement was not a stray remark made in isolation and unrelated to the decision-making process. According to Zampierollo, the statement was made in the context of a conversation he had with his direct supervisor and key decisionmaker regarding his termination, as a direct response to Zampierollo's inquiry as to why Trane was terminating his employment. Accordingly, a reasonable jury could conclude that the use of the word "rejuvenation" or "rejuvenate" in this context unambiguously suggests an age-based animus. See, e.g., G-K-G, Inc., 39 F.3d at 746.[9]

_____

[9] Trane cited Patten, 300 F.3d 21, in support of its proposition that an inherently ambiguous statement cannot constitute direct evidence of discrimination. Although Trane made no developed argument as to why our holding in Patten should be controlling, we clarify that Patten is clearly distinguishable. In that case, the plaintiff, who had a disability known to her employer since before it hired her, had an absenteeism problem which had become quite serious. Patten, 300 F.3d at 23. After having missed six days of work, leaving early one day without justification, and calling in sick on another day, all within a span of twenty-two days, it became evident to her employer that the plaintiff could not comply with its attendance policy. Id. at 24. Her supervisor thus called her in and stated, "[w]e understand

-36-

Trane further argues that, even if Zampierollo's deposition testimony about Flefel's "rejuvenation" statement is

<hr>

that you have health problems.  We understand that you are disabled, but we don't want you working in this store." Id.  The plaintiff filed a disability-based discrimination claim against her employer, and the case proceeded to trial. Id.  At trial, "[a]ll of [the plaintiff's] allegations were denied by management personnel," who testified that she was fired for "gross misconduct of the attendance policy." Id.  The jury concluded that although the plaintiff was disabled, "her disability was not the determining factor in [her employer's] decision to discharge her." Id.  It therefore ruled in the employer's favor. Id.  On appeal, in the context of reviewing a jury instruction, we held that the statement allegedly made by the supervisor did not qualify as direct evidence because the statement was "subject to the interpretation that management fully understood that [the plaintiff] had a disability but could not further abide [her] gross and repeated absenteeism." Id. at 25.  We clarified that "[a] decisionmaker's mentioning of a disability in the context of an adverse employment action cannot, without more, constitute direct evidence of discrimination." Id. at 25-26.

Zampierollo argues that Patten is inapposite because that case concerns an appeal of "a jury's verdict concluding that [the plaintiff] was not discriminatorily discharged," whereas "[h]ere, Zampierollo has not even been given an opportunity to have a jury hear and weigh the 'rejuvenation' comment and determine whether it is discriminatory or not."  We agree with Zampierollo that both cases were appealed at different stages and that the issues presented in each appeal are different.  The key distinction, however, is that unlike in Patten, where the supervisor merely referenced a protected ground in the context of an adverse employment action, here, Flefel did not merely reference Zampierollo's age in the context of his termination.  Instead, Flefel made his age-related statement in direct response to Zampierollo's specific question as to why Trane was terminating his employment.  That is, Flefel specifically told Zampierollo that the reason why Trane was terminating him was because it wanted to rejuvenate its team/management/region.  Accordingly, in light of the context in which it was made, Flefel's statement was not inherently ambiguous and it constitutes direct evidence of discrimination.  Hence, Patten is inapposite.

-37-

unambiguous and could constitute direct evidence, it would still be unreasonable for a jury to conclude that it is sufficient direct evidence that Zampierollo was terminated because of his age when one considers the effect that the restructuring of the business had in Trane's workforce. Specifically, Trane stresses that, as the district court found, there was a higher percentage of employees within the protected age group after the reorganization than before it.

The evidence in the record, however, does not support Trane's contention or the district court's finding that "there was a higher percentage of employees in the protected age group after the [reduction in force] than before the same." Zampierollo-Rheinfeldt, 2020 WL 882174, at *10. In fact, the record supports the opposite conclusion. It is uncontested that, effective September 30, 2013, Trane terminated Zampierollo and three other employees, and these four employees were the only ones terminated as part of Trane's reduction in force. Three out of these four terminated employees were over the age of forty. It is also undisputed that as of October 1, 2013, forty-five of Trane's ninety-five Puerto Rico employees (or 47.3% of its workforce) were forty years of age or older. Thus, a simple mathematical analysis leads us to conclude that on September 30, 2013, when Trane terminated Zampierollo and three other employees, its workforce

-38-

was composed of ninety-nine employees, forty-eight (or 48.4%) of which were in the protected age group. In consequence, contrary to Trane's contention, the percentage of its employees within the protected age group decreased after the reduction in force.[10]

_____

[10] We note that, at his deposition, defense counsel asked Zampierollo to estimate the number of Trane employees within the protected age group before the reduction in force. Zampierollo was not sure of this figure, but estimated that, before the reduction in force, Trane's workforce was composed of approximately one hundred employees of which "[p]robably a third" were over forty. This figure was underestimated. Then, to support its contention that more employees were within the protected age group after the reduction in force than before the same, Trane conveniently used Zampierollo's pre-reduction in force underestimated figure as a comparator, instead of using the real pre-reduction in force figure. By so doing, Trane conveniently reached a result that, although favorable to its argument, distorts the truth.

Our analysis does not factor in the effect of Trane's hiring of a Parts Manager and a Logistics Manager in 2014. According to Trane, the restructuring -- which was planned in or about August 2013 and became effective on October 1, 2013 -- affected only four employees (Zampierollo and the other three employees terminated on September 30, 2013). Furthermore, Trane admitted that the decision to hire these two additional managers occurred "[a]fter the restructuring [had] t[aken] place." Defs. SUMF in Supp. of Mot. for Summ. J. at 11 ¶¶ 83-84, Zampierollo-Rheinfeldt, No. 15-1255-RAM (D.P.R. Jan. 8, 2016), ECF No. 20. Moreover, Trane itself used the data from its workforce as of October 1, 2013, to make its point that the number of employees in the protected age group allegedly increased after the restructuring. Defs. Mot. for Summ. J. at 45-46, Zampierollo-Rheinfeldt, No. 15-1255-RAM (D.P.R. Jan. 8, 2016), ECF No. 19. In light of these facts, and because we construe the facts in the light most favorable to the nonmovant, we assess the age-neutrality of the restructuring by looking to the demographic makeup on October 1, 2013, the date Trane itself used in making its age-neutrality argument.

Finally, Trane makes much out of the fact that a big chunk of its Puerto Rico office's expenses consisted of salaries and benefits and that it had a legitimate interest in reducing such expenses, which it sought to do through a reduction in force. Whatever legitimate business reasons Trane might have had to reduce its workforce, it is not enough, in light of the direct evidence put forth by Zampierollo, to take the issue away from a jury. The ADEA does not prevent an employer from reducing its expenses through the implementation of reductions in force. "But an employer may not use its [reduction in force]/reorganization/improved-efficiency rationale as a pretext to mask actual discrimination . . . ." Hodgens, 144 F.3d at 166. Accordingly, an employer who has a "compelling reason wholly unrelated to the [age] of any of its employees to reduce the size of its work force" may still be liable under the ADEA if it "use[s] the occasion as a convenient opportunity to get rid of its [older] workers." Id. at 167 (quoting Matthews v. Commonwealth Edison Co., 128 F.3d 1194, 1195 (7th Cir. 1997)).

In sum, the record contains direct evidence to support Zampierollo's theory that Trane selected him for termination because of his age, due to Trane's desire to rejuvenate its team/management/region. In light of this direct evidence, the district court should have denied Trane's motion for summary

judgment and allowed the case to proceed to trial, see Alvarez-Fonseca, 152 F.3d at 24, instead of analyzing Zampierollo's ADEA claim under the McDonnell Douglas framework, see Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996) (stating that the McDonnell Douglas framework is inapposite when a plaintiff produces direct evidence of discrimination).[11]  Accordingly, we vacate the district court's grant of summary judgment on the ADEA claim.[12]

---

[11]  In ruling that the direct evidence put forth by Zampierollo was enough to defeat summary judgment and proceed to trial, we do not mean to limit the evidence that Zampierollo may present at trial or the route that he may follow to prove his case. At trial, Zampierollo may use his direct evidence to prove Trane's motive and may "reinforce that evidence with proof that [Trane's] ostensible reasons for firing him were unworthy of belief." See G-K-G, Inc., 39 F.3d at 747.  He may also elect to ask the jury to infer discrimination by using "an adaptation of McDonnell Douglas to the trial setting."  Id. (noting that "a plaintiff who has withstood the defendant's motion for summary judgment, yet has not been able to obtain summary judgment for himself and must therefore go to trial, can ask the jury to infer discrimination from the defendant's failure to present a credible explanation for why it fired the plaintiff despite his satisfying the defendant's legitimate expectations, and replaced him with a member of a nonprotected group").  None of this is to say that Trane acted in a discriminatory manner.  Our task at this point is not to decide whether Zampierollo was terminated because of his age.  Rather, we rule only that he has direct evidence to warrant a trial.

[12]  Our conclusion makes it unnecessary to address Zampierollo's arguments regarding the district court's application of the McDonnell Douglas burden-shifting framework.

-41-

### 2. Law 100 Claim

Puerto Rico Law 100, like the ADEA, provides a cause of action for persons who suffer discrimination in their employment because of their age. See Ramos-Santiago v. WHM Carib, LLC, 919 F.3d 66, 72 (1st Cir. 2019). "Law 100's protections against age discrimination are 'coterminous' with the ADEA's protections," Puig v. Novo Nordisk Inc., 992 F.3d 12, 16 (1st Cir. 2021), although the "plaintiff's burden is lighter" under Law 100, Vélez, 585 F.3d at 452 n.7.[13]

Here, the district court based its dismissal of Zampierollo's Law 100 claim on the dismissal of the ADEA claim. In light of our ruling that Zampierollo's ADEA claim must be reinstated, we must vacate the summary judgment ruling on the Law 100 claim as well.

### 3. Law 80 Claim[14]

Law 80, Puerto Rico's Unjust Discharge Act, protects employees hired without a fixed term from being terminated without

---

[13] Under Law 100, "absent just cause for dismissal, the plaintiff's prima facie case creates a rebuttable presumption of discrimination which shifts to the defendant not only the burden of producing the evidence, but also of persuading the trier." Vélez, 585 F.3d at 452 n.7 (quoting Menzel v. W. Auto Supply Co., 848 F.2d 327, 331 (1st Cir. 1988)). "To defeat that presumption, 'the employer must prove, by a preponderance of the evidence, that the challenged action was not motivated by a discriminatory age animus.'" Id. (quoting Alvarez-Fonseca, 152 F.3d at 27-28).

[14] We refer to the version of Law 80 in force prior to

just cause.  P.R. Laws Ann. tit 29, § 185a.  If the employer terminates the employee without just cause, it must pay him a severance or "mesada," which is calculated pursuant to a formula that takes into account the employee's salary and years of service with the employer.  Id.  The statute's definition of just cause includes "three [reasons] that relate to company restructuring or downsizing."  Carrasquillo-Ortiz v. Am. Airlines, Inc., 812 F.3d 195, 196 (1st Cir. 2016) (citing P.R. Laws Ann. tit. 29, § 185b(d), (e), (f))[15].  Pursuant to section 185c, however, "[a]n employer citing a restructuring or downsizing reason as just cause 'must

_____

its amendment in 2017.  See P.R. Laws Ann. tit. 29, §§ 185a–185n (added on Jan. 26, 2017, No. 4); López-Santos v. Metro. Sec. Servs., 967 F.3d 7, 11 n.3 (1st Cir. 2020).

[15]   The statute provides that the following reasons "shall be understood as just cause":

. . .

(d)  Full, temporary, or partial closing of the operations of the establishment. . . .

(e) Technological or reorganization changes as well as changes of style, design, or the nature of the product made or handled by the establishment, and changes in the services rendered to the public.

(f) Downsizing made necessary by a reduction in the foreseen or prevailing volume of production, sales, or profits at the time of the discharge or for the purpose of increasing the establishment's competitiveness or productivity.

P.R. Laws Ann. tit. 29, § 185b(d)-(f).

give preference to those employees with greater seniority over those with less seniority within the same occupational classification.'" Puig, 992 F.3d at 18 (quoting Carrasquillo-Ortiz, 812 F.3d at 196); P.R. Laws Ann. tit. 29, § 185c.[16] If the employer fails to follow this preferential retention mandate, the employee's dismissal will generally be without just cause. See P.R. Laws Ann. tit. 29, § 185c.

Once the plaintiff alleges unjustified dismissal and proves by a preponderance of the evidence that he was discharged, it is presumed that the dismissal was unjustified. Alvarez-Fonseca, 152 F.3d at 28. The burden of proof then shifts to the

---

[16] Specifically, section 185c establishes that:

> In any case where employees are discharged for the reasons indicated in subsections (d), (e) and (f) of § 185b of this title, it shall be the duty of the employer to retain those employees of greater seniority on the job with preference, provided there are positions vacant or filled by employees of less seniority in the job within their occupational classification which may be held by them . . . . However, at the time of the discharge . . . , if there is a reasonably clear or evident difference in favor of the capacity, productivity, performance, competence, efficiency or conduct record of the compared employees, the employer may make a selection based on such criteria.

P.R. Laws Ann. tit. 29, § 185c.

employer to prove by a preponderance of the evidence that the discharge was justified. Id. at 27-28.

The Puerto Rico Supreme Court has clarified that, although not all unjustified terminations are necessarily discriminatory, all discriminatory terminations are unjustified. Díaz v. Wyndham Hotel Corp., 155 P.R. Dec. 364, 387 (2001) (certified translation). Hence, a finding of age discrimination in this case would necessarily make Zampierollo's termination unjustified under Law 80. See id. Because, as discussed above, there are genuine issues of material facts that must be resolved at trial regarding whether Trane terminated Zampierollo because of his age, the district court erred in granting summary judgment for Trane on Zampierollo's Law 80 claim. We, thus, vacate the entry of summary judgment on the Law 80 claim.

## III.  Conclusion

We reverse the exclusion of the two documents from the summary judgment record, vacate the district court's entry of summary judgment in Trane's favor, and remand for further proceedings consistent with this opinion. Costs are awarded to the appellant.